SMITH v. DISTRICT COURT OF SECOND JUDICIAL DISTRICT IN AND FOR MORGAN COUNTY et al.

No. 4517. Decided May 3, 1927. (256 P. 539.)

*C. R. Hollingsworth* and *Joseph E. Evans,* both of Ogden, for plaintiff.

*Pratt & Pratt,* of Ogden, for defendants.

THURMAN, C. J.

This is an original proceeding for a writ of prohibition directed to the Second judicial district court of Utah, in and for Morgan county, and Hon. James N. Kimball, one of the judges thereof, prohibiting them from exercising jurisdiction to try a case pending in the district court of Morgan county. The case so pending in Morgan county was commenced in August, 1925, and is entitled Conway Morris et al. v. Hyrum Smith, the plaintiff herein. Said action was instituted to determine the right to the use of the waters of certain springs situated in Morgan county and for damages for interference with said waters, in the sum of $1,000, and for injunctive relief. The defendant in such action, plaintiff herein, filed his answer to the complaint in said action, and alleged, in substance, that he was the prior appropriator of said waters and the owner of the right to the use thereof; that plaintiff had interfered with his use of said waters to his damage in the sum of $1,500, for which sum he prayed judgment, and for equitable relief. In addition to the above-stated matters, alleged in the answer by an amendment thereto, it was alleged that there was an action pending in the district court of Weber county in said Second judicial district to determine the rights to the use of the waters of the Weber river system, and that the waters of the springs in controversy in the action filed in Morgan county are a part of the waters of said Weber river system; that said action is entitled Plain City Irrigation Co. v. Hooper Irrigation Company, and was commenced in January, 1921, in conformity with the provisions of chapter 67, Ses. Laws Utah 1919. It is further alleged in the answer that the action filed in Morgan county is barred by the action filed in Weber county by the provisions of said chapter 67.

The pleadings filed in the action in Morgan county are attached to and made part of the application filed by plaintiff herein. For convenience hereinafter the action pending

in Morgan county will be referred to as the "Morgan county action" and the action filed in Weber county will be referred to as the "Weber county action." Parts of the pleadings in said action not already stated will be referred to hereinafter, in so far as they appear to be material.

It is alleged in the application for the writ that in June, 1926, the Morgan county action came on for trial in the district court of Morgan county before Hon. George S. Barker, one of the judges of said district court; that defendant therein objected to the court proceeding with the trial, upon the grounds that the issues in said cause should be tried in the Weber county action then pending in the district court of Weber county, and that the action in Morgan county was therefore barred by the provisions of chapter 67, Sess. Laws 1919. The court sustained the objection of defendant in that action, on the grounds stated in the objection, and declined to proceed with the trial. It is then alleged by plaintiff herein that said order of said court is still in force and has not be vacated or set aside, and that no proceedings have been instituted to review or modify the same.

It is further alleged in the application that thereafter the district court of Morgan county and Hon. James N. Kimball, one of the judges thereof, set said Morgan county action for trial for November 29, 1926, upon the issues as framed in said action, that it would require many days to try the same at great expense to the parties thereto, and that it would be an idle proceeding. It is furthermore alleged that the state of Utah has not been made a party to the Morgan county action, and that plaintiff herein has no plain, speedy, or adequate remedy in the ordinary course of law, and that said trial and proceeding would be without and in excess of the jurisdiction of said court and judge thereof.

An alternative writ was issued restraining the defendant from further proceeding in the Morgan county action pending the further order of the court.

It appears from defendants' answer herein that an injunction was issued on behalf of the plaintiffs in the Morgan

county action when the action was commenced, restraining the defendant therein from further commission of the wrongs alleged in the complaint, and that the same has never been vacated or dissolved. It also appears that the defendant Hon. James N. Kimball, as one of the judges of the district court in and for Morgan county, was called upon to hear a contempt proceeding in the Morgan county action, in which it appeared that the defendant in said action was charged with violating said injunction; that instead of tryng said contempt proceeding the court set the case for trial on its merits, as alleged in the answer.

In addition to their answer defendants entered a general demurrer to both the application and the alternative writ. In support of their demurrer defendants contend that plaintiff has a plain, speedy, and adequate remedy by appeal in the event a judgment is rendered against him in the Morgan county action. It is further contended that it was within the power of said court to set aside its former order of June, 1926, staying proceedings in said cause and to proceed to a trial of the action.

No doubt it would have been more regular and more in accordance with orderly procedure if the court had first vacated the order made by Hon. George S. Barker, as judge of said court, made and entered in June, 1926, declining to proceed with the trial. But the failure to observe meticulous propriety in courts of justice ordinarily does not present a question going to the jurisdiction of the court. No doubt Hon. George S. Barker, as judge of said court, could have vacated and set aside his order of June, 1926, and set the case for trial. If he could do so, any other judge of the same court had the same power. In our opinion, as far as that ruling is concerned, it was not even reversible error on appeal unless prejudice was shown, much less an excess of jurisdiction for which a writ of prohibition should issue. This feature of the case is not a question of serious controversy between the litigants. The principal question is, Was the Weber county action, in pursuance of

the provisions of chapter 67, Sess. Laws 1919, a bar to the action filed in Morgan county?

Sections 21 to 38, inclusive of chapter 67, supra, apparently present a comprehensive plan for the determination of water rights pertaining to a river system or other source of water. The form of action was evidently intended to apply where many persons claim rights to the use of water from such source of supply. One of the purposes of the statute was to prevent piecemeal litigation in the determination of water rights and determine them all in one action. Such is the only effectual method of determining them in order to prevent a multiplicity of actions in which the same party is oftentimes compelled to try his rights over and over again until all persons claiming rights are made parties to the action. Another purpose of the statute, evidently, was to make a permanent record of such rights by decree of court instead of permitting the evidence thereof to rest in parole. For these purposes the statute is in the highest sense remedial and will no doubt prove to be of great benefit to those persons who are owners of water rights in the systems to which that form of action applies.

It is impracticable to refer in detail to all the provisions of the statute constituting the form of action provided by the statute; nor is it necessary to do so, inasmuch as its validity is not in question and is treated here as an established form of action. It is necessary, however, to make reference to the general plan, for the nature and scope of the action is material to a decision of the questions involved.

The statute provides for a survey of the river system or water source by the state engineer. Then an action may be commenced by the state engineer by filing a statement with the clerk of the district court, which statement must show that a complete survey has been made, together with the names and post office addresses of the persons claiming rights to the use of water, as far as known to the engineer. If an action is commenced by some other person the engineer must be notified thereof by the clerk, and if the survey has

not theretofore been made the state engineer must proceed to make it and file with the clerk a similar statement to that above referred to. In either case the clerk of the court shall publish notice in some newspaper for a specified period of time and also serve written notice by mail to each of said claimants. The notice is to the effect that each claimant must within 60 days after the service of the notice file a written statement with the clerk setting forth his claim to the use of water. Said notice shall also be personally served and shall serve as a summons in the action. Such claimants to the use of water, within the time stated in the notice, must file their statements with the clerk of the court. The nature of the statement is described in the statute and must be made under oath. Within 30 days thereafter the state engineer shall begin to tabulate the statements and as expeditiously as possible report the same to the court with his recommendations as to how all rights involved shall be determined. The filing of each statement shall be considered notice to all other claimants, and any person failing to file a statement is forever barred from asserting any rights to the use of water. It is provided, however, that if he has only been served by notice published in a newspaper he may apply to the court for permission to file a statement after the time therefor has expired, and the court may extend such time for a period not exceeding six months from the first publication of the notice. Such person must also publish in some newspaper, as designated in the statute, notice of his claim to all other claimants in the system. The statements filed by claimants shall stand in the place of pleadings, and issues may be made thereon. The court may appoint referees, masters, engineers, soil specialists, etc., as necessity or emergency may require, to assist in taking testimony or investigating facts, and, for the purpose of determining rights to the use of water, the statements of claimants, maps, records, and reports of the state engineer, or other engineers, or soil specialists appointed by the court shall be competent and prima facie evidence of the facts therein stated. Amend-

ments to statements or pleadings are provided for by the statute. It is then provided that after full consideration of the statements, surveys, records, and files, and a personal examination of the river system or water source if such examination is deemed necessary, the state engineer shall formulate a proposed determination of all rights to the use of the water of such river system or water source, and a copy of such proposed determination shall be mailed to each claimant with notice that any claimant dissatisfied with such determination may within 90 days file with the clerk of said court written objections thereto. The state engineer shall distribute such waters in accordance with said proposed determination until a final decree is rendered by the court or until the court shall instruct him otherwise. Former decrees are to be observed until reversed or modified. If no contest is filed the court shall render judgment in accordance with the proposed determination, which shall determine the rights of the several claimants. If any contest or objection on the part of any claimant is filed the court shall grant a hearing thereon and take testimony after notice to all the claimants. Upon completion of the hearings the court shall enter judgment which shall determine and establish the rights of the several claimants to the use of the water. An appeal is allowed from all final judgments to the Supreme Court, on the record made in the district court, and may, as in equity cases, be on questions of both law and fact. The clerk of the district court is required to issue a certificate to each claimant to whom water has been awarded and record a duplicate thereof in a book specially provided for that purpose. Whenever any civil action is commenced in the district court involving the use of water from any river system or water source the court in its discretion may, if a general determination has not been had of the rights to the use of such water, proceed as provided in the statute. In any action for the determination of water rights the state of Utah shall be joined as a necessary party.

Such is a general outline of the form of action provided by the statute for the determination of rights to the use of the waters of a river system or other water source.

The sole question to be determined in the instant case seems to be, Is the Morgan county action barred by the pending of the general adjudication action filed in Weber county? Plaintiff contends that it is; defendants that it is not. Are the two cases so nearly identical as to parties and the relief sought in each case as to bring the cases within the rule that where the same matter is brought before the courts of concurrent jurisdictions the one obtaining jurisdiction first will retain it until the controversy is determined, to the entire exclusion of the other?

It already appears from the outline given of the form and nature of the action provided by the statute that the sole purpose is to adjudicate and determine the rights of claimants to the waters to which the statute applies. After a most careful and thorough examination of the statute in question we have been unable to find any warrant for the court in such action to undertake to determine any question except rights to the use of the water involved and, perhaps, as a necessary corollary injunctive relief for the protection of such rights after they have been adjudicated and determined. No provision appears to have been made for cross-actions for any further or different relief than the determination of such rights.

In the Morgan county action both plaintiffs and defendants seek not only the determination of their respective rights but also other and different relief. Plaintiffs in that case procured a temporary restraining order against the defendants' interference with the water, which order is still pending in that court. They also prayed for damages in the sum of $1,000. Defendant counterclaimed and prayed for damages in the sum of $1,500. Manifestly, such relief as this is not within the contemplation of the statute providing for a general adjudication of water rights.

Messrs. DeVine, Howell, Stine, and Gwilliam have appeared in the case as friends of the court and have referred us to the following cases: *Farm Investment Co.* v. *Carpenter,* 9 Wyo. 110, 61 P. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918; *White* v. *Reservoir Co.,* 22 Colo. 191, 43 P. 1028, 31 L. R. A. 828; *Pacific Live Stock Co.* v. *Oregon Water Board,* 241 U. S. 440, 36 S. Ct. 637, 60 L. Ed. 1084; *Farmers' Canal Co.* v. *Frank,* 72 Neb. 136, 100 N. W. 286; *Eden Irr. Co.* v. *Dist. Court of Weber County et al.,* 61 Utah, 103, 211 P. 957. None of these cases lend any support to plaintiffs' contention as to the particular question under review. Nearly all of them deal with constitutional objections raised to forms of action enacted by statutes in other states somewhat similar to the Utah statute. No such questions are involved in the case before us. If they were, it is sufficient to say all such questions were determined in the Utah case above questions are concerned, it may be stated in passing that in the Utah case the constitutionality of the Utah statute, upon every question raised, was decided in favor of its validity. There are, however, one or more of the cases cited which in the opinion of the court tends strongly to support the contention of the defendants.

In *Pacific Live Stock Co.* v. *Oregon Water Board,* supra, the statute administered by the defendant water board was in every essential particular substantially the same as the Utah statute. The plaintiff, who was the owner of water rights within the jurisdiction of the board and party to an action therein, sought to restrain the action of the board on various grounds, among others that plaintiff was a party to other actions pending in the district court substantially identical with the proceeding before the board, and that, the continued prosecution of the proceeding before the board constituted an admissible interference with the jurisdiction of the district court and therefore should be enjoined. In passing upon the question the United States Supreme Court, speaking through Mr. Justice Van Devanter, at page 447 of the report (36 S. Ct. 641), said:

"The rule that where the same matter is brought before courts of concurrent jurisdiction, the one first obtaining jurisdiction will retain it until the controversy is determined, to the entire exclusion of the other, and will maintain and protect its jurisdiction by an appropriate injunction, is confined in its operation to instances where both suits are substantially the same, that is to say, where there is substantial identity in the interests represented, in the rights asserted and in the purposes sought. *Buck* v. *Colbath*, 3 Wall. 334, 345 [18 L. Ed. 257]; *Watson* v. *Jones*, 13 Wall. 679, 715 [20 L. Ed. 666]; *Rickey Land Co.* v. *Miller & Lux*, 218 U. S. 258, 262 [31 S. Ct. 11, 54 L. Ed. 1032]. This is not such an instance. The proceeding sought to be enjoined, although in some respects resembling the prior suits, is essentially different from them. They are merely private suits brought to restrain alleged encroachments upon the plaintiff's water right, and, while requiring an ascertainment of the rights of the parties in the waters of the river, as between themselves, it is certain that they do not require any other or further determination respecting those waters. Unlike them, the proceeding in question is a quasi public proceeding, set in motion by a public agency for the state. All claimants are required to appear and prove their claims; no one can refuse without forfeiting his claim, and all have the same relation to the proceeding. It is intended to be universal and to result in a complete ascertainment of all existing rights, to the end: First, that the waters may be distributed, under public supervision, among the lawful claimants according to their respective rights without needless waste or controversy; second, that the rights of all may be evidenced by appropriate certificates and public records, always readily accessible, and may not be dependent upon the testimony of witnesses with its recognized infirmities and uncertainties; and, third, that the amount of surplus or unclaimed water, if any, may be ascertained and rendered available to intending appropriators."

Again, at page 449 (36 S. Ct. 641), in the same opinion, the court speaking of the action before the board, said:

"In such a proceeding the rights of the several claimants are so closely related that the presence of all is essential to the accomplishment of its purposes, and it hardly needs statement that these cannot be attained by mere private suits in which only a few of the claimants are present, for only their rights as between themselves could be determined. As against other claimants and the public the determination would amount to nothing. And so, upon applying the test before indicated, it is apparent that the assumed substantial identity between the proceeding and the pending suits does not exist."

In *Farm Investment Co.* v. *Carpenter* (Wyo.) supra, the validity, nature, and purpose of the Wyoming statute providing for a board empowered to adjudicate and determine rights to the use of water was under review. The fundamental provisions of the statute constituting the form of procedure was very similar to those of the Utah statute. At page 264 of the report (9 Wyo. 134), the court said:

"The position maintained by counsel is that a determination of the priorities of rights to the use of water involves solely a judicial inquiry into rights to property as between private parties; and that the jurisdiction to undertake such an investigation and adjudicate therein can be constitutionally lodged only in some court which is by article 5 of the Constitution vested with judicial power. The statute nowhere attempts to divest the courts of any jurisdiction granted to them by the Constitution to redress grievances and afford relief at law or in equity under the ordinary and well-known rules of procedure. A purely statutory proceeding is created to be set in motion by no act or complaint of any injured party, but which in each instance is to be inaugurated by order of the board; a proceeding which is to result not in a judgment for damages to a party for injuries sustained, nor the issuance of any writ or process known to the law for the purpose of preventing the unlawful invasion of a party's rights or privileges; but the finality of the proceeding is a settlement or adjustment of the priorities of appropriation of the public waters of the state, and is followed by the issuance of a certificate to each appropriator showing his relative standing among other claimants, and the amount of water to which he is found to be entitled."

In *Watson* v. *Jones*, 13 Wall. 679, at page 715 (20 L. Ed. 666), the United States Supreme Court said:

"In regard to the suit in the chancery court of Louisville, which the defendants allege to be pending, there can be no doubt but that that court is one competent to entertain jurisdiction of all the matters set up in the present suit. As to those matters, and to the parties, it is a court of concurrent jurisdiction with the Circuit Court of the United States, and as between those courts the rule is applicable that the one which has first obtained jurisdiction in a given case must retain it exclusively until it disposes of it by a final judgment or decree. But when the pendency of such a suit is set up to defeat another, the case must be the same. There must be the same parties, or at least such as represent the same interest, there must be the

same rights asserted, and the same relief prayed for. This relief must be founded on the same facts, and the title or essential basis of the relief sought must be the same. The identity in these particulars should be such that if the pending case had already been disposed of, it could be pleaded in bar as a former adjudication of the same matter between the same parties."

In the Morgan county action, as already appears, each of the parties sought an adjudication of their rights in the springs, and each of them also prayed for damages for the interference with said rights. In addition to that the plaintiffs at the commencement of their action obtained a temporary injunction against the defendant, which has never been dissolved. As we interpret the statute, chapter 67, neither plaintiff nor defendant in the Morgan county action could, in the Weber county action, obtain the full relief prayed for in their respective pleadings. Neither of them could have obtained a judgment for damages; nor could the plaintiff have obtained a temporary injunction for interference with his alleged rights. Furthermore, the question arises, under the rule announced by the United States Supreme Court, in the passage last quoted, when the Weber county action is finally disposed of, under the issues of that case, will the judgment therein be a bar to the additional relief prayed for by each of the parties in the Morgan county case? If not, then there is not such identity in the cases that the pendency of one will be a bar to the other.

Counsel for defendants also call our attention to the rule as announced in 1 C. J. p. 72, § 93, as follows:

"As has also been stated, one of the generally recognized tests of the identity of causes of action is this: Is full and adequate relief obtainable in the prior suit? If it is, then the second suit is unnecessary, and vexatious and should abate; but it is otherwise if the whole relief sought in the second suit is not obtainable in the first. If the relief which may be given or the remedies available in the second suit are more extensive than can be obtained in the first, a plea to the second suit of the pendency of the first is not good. The rule in equity is the same as at law, that the plea of a prior suit pending can be

pleaded when, and only when, all the relief sought in the second action is obtainable in the first."

See, also, page 74, § 96, same volume, where it is stated "that in an action on a cause accruing after the commencement of a prior action between the same parties, the pendency of the prior action is not graund for plea in abatement, for the causes of action are not the same." As far as the action and counterclaim for damages are concerned, and also the grounds for the temporary injunction in the Morgan county action, the cause therefor arose after the commencement of the Weber county action.

Considering this case from every point of view, we are of opinion the writ prayed for should be denied.

Plaintiff makes some point of the fact that the state of Utah was not made a party in the Morgan county action, as provided in section 38, chapter 67, supra. The point does not appear to be seriously relied on in the argument. In any event, as to that plaintiff has a plain, speedy, and adequate remedy. It only required a motion addressed to the court in that action to have the state made a party. The omission to make the state a party, where no effort is made in the action to have it done, is certainly no grounds for which to apply for a writ of prohibition.

The writ is denied, at plaintiff's cost.

CHERRY, STRAUP, and HANSEN, JJ., and EPHRAIM HANSON, District Judge, concur.

FRICK, J., did not participate herein.