In the Matter of the General Determination of Rights to the Use of All Water, Both Surface and Underground, Within the San Rafael River Drainage Area and All Its Tributaries in Utah.

**Russel H. JENSEN, Plaintiff and Appellant,**

v.

**Robert L. MORGAN, State Engineer of the State of Utah; and United States of America, intervenor, Defendants and Appellees.**

No. 900232.

Supreme Court of Utah.

July 31, 1992.

Rehearing Denied Dec. 24, 1992.

E.J. Skeen, Salt Lake City, for Russel H. Jensen.

R. Paul Van Dam, John H. Mabey, Jr., and Michael M. Quealy, Salt Lake City, for Robert L. Morgan.

Dee V. Benson, Salt Lake City, Robert L. Klarquist, and John R. Hill, Denver, for U.S.

HOWE, Associate Chief Justice:

Plaintiff Russel H. Jensen appeals from an order dismissing two separate actions that he had filed in the trial court. On his motion, the two actions were consolidated because they both involved a water right claimed by Jensen in Bull Hollow, a tributary of the San Rafael River in Emery County. For clarity, the facts giving rise to each of the actions are separately stated.

## I. CIVIL NO. 1435 (GENERAL ADJUDICATION)

On May 28, 1953, the trial court entered an order requiring that all water rights within the San Rafael River drainage area be adjudicated pursuant to title 73, chapter 4 of the Utah Code.

On October 12, 1977, Jensen filed his water-user's claim ("WUC") 93–1114 for 200 acre feet for irrigation and entered his appearance in the general adjudication proceeding. He listed his address on the claim as 4570 West 5780 South, Kearns, Utah 84118. The United States Bureau of Land Management ("BLM") filed WUC 93–1091 on August 25, 1983, for the storage of water in a new reservoir it had constructed at the old Buckhorn Reservoir site.[1]

Subsequent water applications signed and filed by Jensen with the state engineer in the early part of 1983 did not bear the Kearns address but listed it simply as Huntington, Utah 84528. Therefore, since 1983 all correspondence regarding water rights matters has been mailed by the state engineer to Jensen at Huntington, Utah 84528. In late 1983, the state engineer published and distributed book 2 of *Proposed Determination of Water Rights in San Rafael River Drainage Area.* That determination approved Jensen's WUC 93–1114 and the BLM's WUC 93–1091.

Jensen was given notice by regular mail in November 1983 that a copy of book 2 was available in the state engineer's office. That notice was addressed to him as follows: "Russel H. Jensen, Huntington, Utah 84528." Jensen personally went into the state engineer's office in Price, Utah, and picked up a copy on December 12, 1983. He did not protest or object to the proposed determination in book 2. That same month, Jensen filed WUC 93–957 based on "State Engineer's Certificate of Appropriation of Water, No. 2167," dated January 17, 1925, which entitled Jensen to store 500 acre feet of water annually from Bull Hollow in the old Buckhorn Reservoir

for the irrigation of 152.1 acres of land.[2] His address was again listed on the WUC 93–957 as Huntington, Utah 84528.

In 1986, the state engineer published and distributed book 5 of the proposed determination, subtitled "Supplement, Pending Applications, Disallowed Claims, and Indexes." This book recommended that Jensen's WUC 93–957 be disallowed for non-use. A copy of book 5 was sent by regular mail on March 4, 1986, to Jensen at Huntington, Utah 84528. The copy was not returned to the state engineer by the postal service. The first page of book 5 contained a notice to all water users that if they disagreed with the proposed determination, they must file an objection with the court within ninety days as required by Utah Code Ann. § 73–4–11. No protest or objection was filed by Jensen for over three years. Finally, on July 10, 1989, Jensen filed a petition in the general adjudication proceeding which objected to the recommended disallowance of WUC 93–957 in book 5 and challenged the granting of the BLM's WUC 93–1091. A motion to dismiss this petition was filed on the ground that Jensen had failed to file a timely objection to the proposed determination in book 5. The motion was granted by the trial court.

## II. CIVIL NO. 4975

On July 8, 1985, Jensen filed an application with the state engineer to change the point of diversion of the water to which he was entitled under his certificate of appropriation No. 2167. This is the same water right claimed by Jensen in his WUC 93–957. The BLM protested this change application and appeared at an administrative hearing held before the state engineer on May 19, 1987.

The state engineer rejected the change application in a memorandum decision dated July 17, 1987, which recited the following: the original Buckhorn Reservoir had been breached prior to 1954; it was questionable whether any water was stored un-

---

1. Jensen asserts that WUC 93–1091 was not filed by the BLM in the district court. However, the record indicates that on August 25, 1983, this claim was filed.

2. WUC 93–957 was based on a separate and distinct right from WUC 93–1114. However, both rights sought to irrigate some of the same acreage.

der Jensen's right since the mid–1950s; a right-of-way owned by Jensen's predecessor in interest on BLM property for the Buckhorn Reservoir dam and ditches was permanently canceled in 1961; the BLM subsequently received a water right for Buckhorn Reservoir (WUC 93–1091) and the reservoir was rebuilt by the BLM in 1968; and no water had been stored or used by Jensen or his predecessors under WUC 93–957 for possibly as many as forty years. In denying the change application, the state engineer wrote:

> It was the recommendation of the State Engineer during the recent adjudication [case No. 1435] that this particular water right had been lost because of non-use. It is recognized that the State Engineer does not have statutory authority to make a final decision on the matter of non-use; however, it is within his jurisdiction to make such recommendations to the court. It appears that it may have been as many as forty years since water was stored in Buckhorn Reservoir under this right and released into Bull Hollow to irrigate the applicant's land.

On September 14, 1987, Jensen filed this action in the trial court, Civil No. 4975, to review the state engineer's denial pursuant to Utah Code Ann. § 73–3–14. The BLM intervened as a defendant. The state engineer and the BLM filed timely answers. Jensen took no action on the case until August 18, 1988, when he filed a notice of readiness for trial. Trial was subsequently set for January 24 and 25, 1989. However, the parties later stipulated that the trial setting should be changed to a pretrial conference. A new trial date was set for July 27, 1989, approximately six weeks prior to the running of the limitation contained in section 73–3–15, which requires cases to be dismissed if not prosecuted to a final judgment within two years. Finally, two weeks before the trial date, Jensen filed a motion to consolidate Civil No. 4975 with the ongoing general adjudication (Civil No. 1435). The state engineer and the BLM filed a joint response to Jensen's motion to consolidate. They did not oppose the motion; however, they pointed out that consolidation would necessitate a continu-

ance of the July 27 trial date, and they expressly preserved the right to file a motion to dismiss for failure to prosecute the suit to a final judgment. The trial court granted consolidation for all purposes because of common questions of fact and law but on April 23, 1990 (the same time it dismissed Jensen's petition in Civil No. 1435), granted a motion to dismiss the action for Jensen's failure to prosecute it to a final judgment within two years.

## III. ISSUES ON APPEAL

Jensen raises two primary issues on this appeal: (1) Did the trial court properly dismiss Civil No. 1435 (his petition filed in the San Rafael River general adjudication) because he failed to file timely objections to the proposed determination of water rights in book 5 as required by Utah Code Ann. § 73–4–11? (2) Did the court properly dismiss Civil No. 4975 (his action challenging the decision of the state engineer rejecting his change application) because he failed to prosecute the action to a final judgment within two years as mandated by Utah Code Ann. § 73–3–15?

## IV. DISMISSAL OF PETITION IN THE GENERAL ADJUDICATION ACTION

As this court recognized in *Smith v. District Court,* 69 Utah 493, 498, 256 P. 539, 544 (1927), the purpose of the general adjudication process is to prevent piecemeal litigation regarding water rights and to provide a permanent record of all such rights by decree. Once the general adjudication is initiated, the state engineer is required to give notice to all water users of record and to give further notice by publication. Utah Code Ann. § 73–4–4. Water users then submit their water user claims, outlining their respective claims to the water use. Utah Code Ann. § 73–4–5.

The state engineer prepares a hydrographic survey of the river system and evaluates various water user claims. Utah Code Ann. § 73–4–3. After a full consideration of the claims, surveys, records, and files, the state engineer publishes a pro-

posed determination of water rights. Utah Code Ann. § 73–4–11. A copy of the proposed determination is either mailed or hand-delivered to each claimant for review. Within ninety days after such service, any water user dissatisfied with the proposed determination may file an objection with the district court. The court then hears evidence and renders judgment on the contested claims. Utah Code Ann. §§ 73–4–13 & –15. Absent a protest, the district court must enter judgment in accordance with the proposed determination. Utah Code Ann. § 73–4–12.

Section 73–4–24 provides, "[I]f, during the pendency of a general adjudication suit, there shall be a dispute involving water rights of less than all of the parties to such suit, any interested party may petition the court in which the general adjudication suit is pending to hear and determine the dispute." It was pursuant to this section that Jensen filed his petition on July 10, 1989, contesting the recommendation in book 5 that his WUC 93–957 be denied and that the BLM's WUC 93–1091 be allowed.

Jensen seeks to excuse his failure to timely file an objection to the proposed determination contained in book 5 on the ground that he did not receive a copy of the book and was unaware of its contents until long after the expiration of the ninety-day protest period. He concedes that in December 1983, he learned that the state engineer had prepared book 2 of the proposed determination and that he went to the state engineer's office in Price, Utah, and was given a copy. He contends that he examined the book and found no reference to water right No. 2167 upon which his WUC 93–957 was based and that he orally protested this omission. Jensen stated in an affidavit that "[h]e was told by the Area Engineer, Mark Page, that book 2 was a preliminary tabulation, that his water right would no doubt be added later, and that there was no reason for making a written protest. In accordance with this advice, he made no written protest." Jensen further stated that on March 7, 1986, when the state engineer allegedly mailed a copy of book 5 to him at Huntington, Utah, he had no home or mailing address there, but that

he lived at 4570 West 5780 South, Kearns, Utah 84118; that his son had a post office box in Huntington in which mail was deposited but that it was too small to hold book 5; and that there is another Russel Jensen living in Huntington.

We begin our analysis by stating the relevant statute. Section 73–4–11 provides, in pertinent part:

> [T]he state engineer shall formulate ... a proposed determination of all rights to the use of the water ... and a copy of the same shall be mailed by regular mail to each claimant with notice that any claimant dissatisfied therewith may within ninety days from such date of mailing file with the clerk of the district court a written objection thereto duly verified on oath.

This court has held that regular mailing when allowed by statute, as opposed to actual receipt, is sufficient notice. *Anderson v. Public Serv. Comm'n*, 839 P.2d 822 (Utah 1992); *Mosby Irrigation Co. v. Criddle*, 11 Utah 2d 41, 45, 354 P.2d 848, 852 (1960). In *Mosby*, the state engineer sent notice to a water user that its approved application to appropriate water was about to lapse for failure to submit proof. The relevant statute required that notice be given by mail, which was done. The water user claimed that the notice was not received. We held that the statutory notice requirement was satisfied by evidence of mailing and that the statute did not require actual receipt. *Id.*

■ In the instant case, there is in the record an affidavit of mailing by a secretary in the office of the state engineer which states that she "mailed copies of the Proposed Determination of Water Rights in San Rafael River ... and notice that any protest thereto must be filed within ninety (90) days, on the 4th day of March, 1986, by regular mail, postage prepaid" to a long list of water users, including Jensen, at Huntington, Utah 84528. The notice of the right to protest is found on the first page of the proposed determination. Jensen's copy was mailed to him at the address he had furnished the state engineer on his

WUC 93–957. He does not claim that he had furnished the state engineer with any change of address. Further, one year after the mailing of book 5 to him on March 4, 1986, he filed his complaint in Civil No. 4975, seeking review of the state engineer's denial of his change application. On that complaint, filed September 14, 1987, he listed his address as Desert Valley Ranch, P.O. Box 443, Huntington, Utah 84528. We hold that Jensen was given proper notice, and since he did not file a protest to the state engineer's recommendation within ninety days, the trial court did not err in dismissing his petition.

Jensen's petition also challenged the validity of the BLM's WUC 93–1091, allowance of which was recommended in book 2. Since it is clear that Jensen received book 2 and did not file a timely protest against WUC 93–1091, his petition was properly dismissed.

## V. DISMISSAL FOR FAILURE TO PROSECUTE

Jensen contends that dismissal of Civil No. 4975 for failure to prosecute to a final judgment within two years of the administrative decision was inappropriate for two reasons: (1) Civil No. 4975 was consolidated with Civil No. 1435 (the general determination of water rights) involving less than all parties "for all purposes," thus making the two-year limitation contained in section 73–3–15 inoperative; and (2) the decision of the state engineer was not valid because it was a judicial decision beyond his authority.

### A. *Consolidation for All Purposes*

Utah Code Ann. § 73–3–15 (1980)[3] provides in part:

> An action to review a decision of the state engineer may be dismissed upon the application of any of the parties upon the grounds provided in Rule 41 of the Utah Rules of Civil Procedure for the

dismissal of actions generally and for failure to prosecute such action with diligence. For the purpose of this section[,] failure to prosecute a suit to final judgment within two years after it is filed, or, if an appeal is taken to the Supreme Court within three years after the filing of the suit, shall constitute lack of diligence. All suits heretofore or hereafter commenced must be dismissed after ten days' notice by regular mail to the plaintiff, unless such suits are or were prosecuted to final judgment within the time specified above....

Jensen contends that because of the consolidation, the two-year limitation in section 73–3–15 is no longer operative. He relies upon the following statement in a 1936 edition of *Corpus Juris Secundum:*

> The effect of a consolidation of actions at law is to unite and merge all of the different actions consolidated into a single action for the purpose of all further proceedings the same as if the different causes of action involved had originally been joined in a single action. Thereafter all subsequent proceedings are conducted and the rights of the parties adjudicated in a single action, and there can be no further proceedings in the separate actions, which, by virtue of the consolidation, are discontinued and superseded by the single action.

1 C.J.S. *Actions* § 113, at 1371–72 (1936). The above-quoted passage gives a general overview of the effect of a consolidation of actions at law. However, we have held that judicial review of the state engineer's decisions and general adjudication proceedings are both actions in equity. See *Bullock v. Hanks,* 22 Utah 2d 308, 312 n. 2, 452 P.2d 866, 870 n. 2 (1969); *Smith v. District Court,* 69 Utah 493, 256 P. 539 (1927).

In a more recent edition of *Corpus Juris Secundum,* the effect of consolidation of actions in equity is discussed. "Except where provided by statute, a consoli-

---

**3.** Utah Code Ann. § 73–3–15 was amended effective January 1, 1988, to conform to the provisions of the Utah Administrative Procedures Act, §§ 63–46b–1 to –22. However, section 63–46b–22 provides that statutes and rules govern-ing judicial review of agency actions filed prior to December 31, 1987, shall be governed by statutes as they existed prior to December 31, 1987.

dation in equity does not merge the suits and they maintain their separate identity in so far as the parties, issues, and proof are concerned." 1A C.J.S. *Actions* § 217, at 690 (1985). "[A] consolidation of actions does not affect the rights of the parties. Thus, it does not deprive defendant of his defense to one of the actions.... For the purpose of dismissing a suit for want of prosecution, actions which have been consolidated are treated as distinct." 1A C.J.S. *Actions* § 216, at 687 (1985); *see also* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2382, at 255 (1971) (actions do not lose their separate identities merely because of consolidation); *Bode v. Trousdale Constr. Co.*, 80 Cal.Rptr. 774, 778, 276 Cal.App.2d 419, 423 (1969) ("[I]ndividual actions ... should be treated as distinct even though they have been consolidated, and the time for bringing each action to trial should be measured from the time that particular action was filed."). We agree with the above-stated authorities and therefore reject Jensen's contention that consolidation rendered section 73–3–15 inoperative.

### B. State Engineer's Decision Is Beyond Its Power

Jensen next contends that the state engineer does not have the authority to determine whether a water right had been lost through non-use. He asserts that this is a judicial decision beyond the state engineer's power. The state engineer and the BLM concede that the engineer does not have the authority to finally adjudicate whether a vested water right has been forfeited. *Daniels Irrigation Co. v. Daniel Summit Co.*, 571 P.2d 1323, 1324–25 (Utah 1977). However, they argue that this court is not required to reach this question because Jensen failed to prosecute the case to judgment within two years and it therefore must be dismissed.

■ We recently held that under section 73–3–15, when a party fails to take all reasonable steps to secure a timely trial setting, the action should be dismissed. *Blake v. Hansen*, 782 P.2d 472, 474 (Utah 1989). There we stated, "[C]ounsel knew

of the need to go to trial before the expiration of the two-year period [and] ... knew that the trial date fixed by the trial court executive was too late, and yet did nothing to bring the matter to the attention of the trial judge." *Id.; accord Dansie v. Lambert*, 542 P.2d 742 (Utah 1975); *Provo City v. Hansen*, 601 P.2d 141 (Utah 1979). In the instant case, Jensen did not file a notice of readiness for trial until eleven months after the case was filed. Reasonable steps to secure a timely trial setting were not taken. Moreover, when Jensen sought consolidation, he should have been aware that the two-year period had nearly run and that a new trial date would have to be set beyond the two-year limit. There are no unusual circumstances to warrant a result contrary to *Blake*. Therefore, we hold that the dismissal for failure to prosecute to a final judgment obviates the need to determine if the state engineer acted beyond his authority. The dismissal was proper.

### VI. OTHER ISSUES

■ When the state engineer and the BLM moved to dismiss both actions, Jensen moved to amend his petition in Civil No. 4975 to attack the BLM's WUC 93–1091, the granting of which was recommended in book 2 along with Jensen's WUC 93–1114. The trial court denied the motion to amend. Jensen assails that ruling and relies on Utah Rule of Civil Procedure 15, which directs that amendments to pleadings shall be freely allowed in the interest of justice. We find no abuse of discretion by the trial court. Jensen personally received a copy of book 2, which recommended the allowance of WUC 93–1091, but he took no action to protest the recommendation within ninety days, as required by section 73–4–11. Absent a timely protest, section 73–4–12 directs the district court to enter a decree in accordance with the proposed determination. In view of these statutory requirements, the proposed amendment to the petition would have been fruitless.

Finally, Jensen complains that in 1980 the trial court enlarged the general adjudication proceedings to encompass San Rafael water users in two additional counties,

but proper notice was not given to them of the pendency of ·the adjudication proceedings. However, Jensen was not a user in either of those counties. We decline to review this contention since it was not raised in the trial court and was raised by Jensen in this court only in his reply brief. Addressing this contention now would broaden the scope of appellate review to an impermissible extent.

The order of dismissal is affirmed.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

by Ute Indian in any area of the state traditionally inhabited by Ute Indian tribe was established as such by federal law, as opposed to land traditionally inhabited by specific Indian tribes. Const. Art. 3.