SPANISH FORK WEST FIELD IRRIGATION CO. et al.
v. DISTRICT COURT OF SALT LAKE COUNTY et al.

No. 6164.   Decided February 14, 1941.   (110 P. 2d 344.)

For prior opinion, see 99 Utah 527, 104 P. 2d. 353.

*Elias Hansen,* of Salt Lake City, for plaintiff.

*J. A. Howell,* of Ogden, amicus curiae.

*Van Cott, Riter & Farnsworth, Ingebretsen, Ray, Rawlins & Christensen,* and *Mahlon E. Wilson,* all of Salt Lake City, for defendants.

PRATT, Justice.

Counsel have very thoroughly and exhaustively briefed this case for us. The members of this court, however, have a decided difference of opinion upon the law. Our differences of opinion have apparently tended toward a confusion rather than a clarification of the law upon the issues. For that reason the following resume of those former opinions is submitted.

The majority, if not all of us, agree that a statutory general adjudication of the water rights of any water system must proceed according to statute. The writ heretofore issued prohibits the lower court from substituting any other method of procedure, if the case is conducted as such a statutory general adjudication.

Mr. Judge TRUEMAN believes that all water suits must proceed as statutory general adjudications. The majority of us do not agree with our learned associate. He relies considerably upon the following language taken from Section 100-4-3, Revised Statutes of Utah, 1933:

"Upon the filing of any action for the determination of water rights the clerk of the district court shall notify the state engineer that such has been filed."

This is followed by the designation of duties to be performed by the Clerk and the State Engineer in furtherance of a general adjudication. But we feel that some consideration should be given the following quotation from Section 100-4-18, R. S. U. 1933:

"Whenever any civil action is commenced in the district court involving the use of water from any river system or water source, the court, *in its discretion,* may, if a general determination of the rights to the use of water from said river system or water source has not already been made, proceed, as in this chapter provided, to make such

a general determination. In any such action for the determination of water rights the state of Utah shall be joined as a necessary party." (Italics ours.)

If every water suit must proceed as a statutory general adjudication, then what is there left for the court, under this quoted section, upon which it can exercise its discretion? This section recognizes that suits such as have been designated "private suits" do exist and may proceed without being forced through the statutory general adjudication procedure. Attention is also invited to the last sentence of Sec. 100-4-1, R. S. U. 1933, which is of similar import. It might be asked: Of what efficacy is the discretion in the State Engineer under Sec. 100-4-1, R. S. U. 1933, if any one of the five petitioners may himself institute the statutory general adjudication? Why five petitioners, if one may institute a statutory general adjudication action? Mr. Justice WOLFE does not believe this matter need be decided in this case.

Mr. Judge TRUEMAN expresses the thought that where the code provides a particular remedy for the redress of a given wrong, the injured person may resort to that remedy alone, and he cannot appeal to the equitable powers of the court. The statutory general adjudication ■ is not intended as a remedy for the wrong to an individual, or to protect the individual against adverse interests. The public by its authorized officers is the party to institute the action. Authority for this lies in Section 100-4-1, R. S. U. 1933—in the discretion of the State Engineer—or in Section 100-4-18, R. S. U. 1933—in the discretion of the court. You or I as an individual water user have not been given a new remedy against our neighbors for injuries he may threaten or inflict upon us. The statutory general adjudication is remedial for multifarious suits and conflicting interests among water users of a particular system. I may not hail my neighbor into court except that I allege facts placing him in an adverse position to me— that is, state a cause of action against him; but we may

both be brought before the court in a statutory general adjudication, even though as between us there is no controversy. Title 100 of our laws does not give me power to hail him into court under the guise of a statutory general adjudication. The decision to apply Title 100 is vested—and wisely so—in the disinterested public official. To leave such an all-inclusive remedy in the hand of a complainant would subject the rights of many to the opinion of one whose impartiality may be materially weakened by his interest in the outcome—or possibly his litigious nature—and subject many users to a participation in a two-penny suit between two neighbors.

Mr. Justice WOLFE and Mr. Judge TRUEMAN are of the opinion that the suit filed by the defendants May 28, 1936, is a suit for a statutory general adjudication. Mr. Justice WOLFE, however, believes that such a suit is irregular and should have been initiated by petition to the State Engineer under Section 100-4-1, R. S. U. 1933. The majority of the court are of the opinion that it is a "private" suit, which the lower court may, if it finds a general adjudication advisable, conduct as a statutory general adjudication under and pursuant to Section 100-4-18, R. S. U. 1933.

As stated above, I have no right to hail my neighbor into court except that I charge him with interests or activities adverse to mine. But if I may legitimately make such a charge, it makes no difference how many neighbors I bring in provided I connect each with myself by a statement of such a cause of action. Thus if I as one of the 2,000 water users upon a water system can successfully plead and prove that the other 1,999 users are injuring or threatening injury to me or claim rights adverse to mine, I am entitled to relief against each and every one of them. This, however, would not be the statutory general adjudication of those water rights, though all users of the system were brought into court by me. As to whether or not each remained in the case would depend upon whether

or not each were properly connected to me by a charge of interests or activities adverse to me or mine; but not so in the statutory general adjudication. Though a particular litigant concede my claims, in such an adjudication he would still be forced to remain in the case to enable the court to adjudicate once and for all the rights of the various users upon the system regardless of their adversity to my rights. Thus we see that the "private" suit and the statutory general adjudication may cover the same number of water users, and may decide some issues that are identical in each, but the later adjudication is the broader.

Now getting down to the suit filed May 28, 1936, there are allegations therein which support a "private" suit. There are also allegations which form a background for a statutory general adjudication. However, as our statutes do not authorize the individual to initiate the statutory general adjudication — as indicated above—and the individual has no "inherent" power to initiate such a suit (see also our discussion above upon the stating of a cause of action) the reasonable thing to attribute to counsel for the defendants is the statement of or an attempted statement of a "private" cause of action, a cause recognized in this state. If, however, counsel insist that the cause is statutory, then there is but one thing to be done—dismiss the case for the reason that there is no such cause of action in favor of the individual in this state. Even in a "private" suit I may ask the court to exercise his discretion under Section 100-4-18, above, but such a request is not part of the cause of action, and can not be properly stated as such.

Mr. Justice LARSON invites our attention to the fact that we have no question of pleadings before us here. This arises out of the fact that Mr. Judge TRUEMAN has stated that certain allegations of the complaint of May 28, 1936, should be stricken. The majority of us agree that we have no question of the sufficiency of the pleadings before us. The question of whether or not

a good cause of action has been stated, and the question of whether or not there has been a misjoinder of parties plaintiff or parties defendant, will have to be decided by the lower court. Those questions are not decided here. From the fact that we have said that the suit is a "private" one, it must not be inferred that we have expressed an opinion upon the merits of the statement of a cause of action. We may have a belief of the cause intended without expressing an opinion as to counsel's success, or lack of it, in stating the cause intended. The costs of the conduct of a private suit are, of course, not chargeable to any State Engineer fund. The funds heretofore so expended must be borne by the parties.

From what has been said in this opinion it is apparent that the personnel of the majority is not the same as to each issue. Further details of individual differences may be had, if desired, by reference to the other opinions filed.

Whether the case is treated as a "private" cause of action or a statutory general adjudication of the water rights of the users of the water system, no doubt equitable principles will come into play to solve the merits.

Petition for rehearing denied.

MOFFAT, C. J., and WOLFE and LARSON, JJ., concur.

TRUEMAN, District Judge (dissenting in part).

As Mr. Justice PRATT has pointed out, the law questions involved in this case are understood in different senses by the different members of this Court. I am tolerant of the views of my associates, but I feel an obligation to point out, without hasty generalization, what I believe to be the law.

It is my opinion that the statutory adjudication of water rights provided by Section 100-4-3, R. S. U. 1933, as amended, is intended as a remedy for all adjudications of all water rights in all courts in Utah.

That does not mean that every action filed shall become a general adjudication suit, but rather the following modus

operandi should be observed, followed and upheld in this Court.

When an action is filed for the determination of water rights, Section 100-4-3, R. S. U. 1933, as amended, immediately becomes operative and the published notice required by that statute to be given by the clerk is jurisdictional and mandatory; and, without the performance of such requirements, and the giving of such notice, the court is without warrant of law to proceed.

Hon. James A. Howell, appearing as amicus curiae in this case, has in my opinion very aptly stated the correct rule when he says; and I quote from pages 59, 60 of his brief as follows:

"There were then three ways in which a general adjudication of water rights would ensue,

"(1) in an action instituted by the State engineer;

"(2) in *any* [italics added] action, howsoever and by whomsoever brought for the determination of water rights, and

"(3) when in a civil action commenced in the District Court involving the *use* [italics added] of water from any river system or source, the Court, in its discretion, if a general determination of the rights to the use of water from said river or water source has not already been made, proceed as in the chapter provided, to make such a general determination."

The *use* to which the amicus curiae refers is the gist of the private action referred to by Mr. Justice PRATT. See the example given by Mr. Justice PRATT in his opinion.

An individual desiring to maintain an action for a general adjudication of water rights, and who brings himself within the purview of the statute, may proceed under the provisions of Section 100-4-3, R. S. U. 1933, without having the prosecution of such action taken over as a court function, or by the State Engineer.

Nor is such authorization by either the Court, or the State Engineer, necessary before such individual may proceed in the district court to a general adjudication of all

water rights involved in such an action, and in accordance with the demand of his complaint, provided the complaint, conforms to the statutory requirements, and the remedy provided by law.

One feeling himself aggrieved may not be compelled to hold his property, or any material right, whether a *use right* or otherwise, essential to its enjoyment, at the mere will or discretion of the district court. Such procedure is undoubtedly contrary to the provisions of both the State and Federal Constitutions.

While, in this case, the defendants below must be required to proceed according to the statute, it is not in the province of this Court to say that the defendants (plaintiffs below) can only proceed at the discretion of the district court.

The Court can not convert the defendants' (plaintiffs below) action into a general adjudication as a court function even if the district court exercises its discretion to order a general adjudication, but may suspend the defendants' action pending such general adjudication.

In my opinion the majority in this Court are construing Section 100-4-3, R. S. U. 1933, against the plain and positive intent of Chapter 112, Laws of Utah 1939, specifically providing for the duties of the clerk of the court, and the State Engineer, and requiring statutory notice to be given when *any* action is filed. The majority in this Court are judicially construing the statute so that these things should be done *"if so ordered by the court,"* and that means, *by the court in its discretion,* and that is what the legislature through the 1939 amendatory statute sought to eliminate.

This is an administrative act. It should be so recognized and treated by the courts. Furthermore, it is an important act, and an act in which every citizen in the state is interested. The court should be informed in a private action of the administrative determination of the state engineer the same as in a general adjudication. The statute should be complied with.

At any rate, the legislature had in mind an orderly program which was within its prerogative to determine. Such procedure is the dictate of reason. It is a law which commands what appears to be a useful and necessary program in a well considered administration of a natural resource of the state. The law was enacted in Utah after similar laws varying in degree, but not in purpose and substance, had been in force in other western states, where similar conditions are found; and upheld by the courts of those states.

When any action is filed for "use" of water or otherwise, the district court should have before it the administrative determination in that particular action as to the water right necessary for such consideration as the administration of justice requires, and as may be involved in such actions, which I will not pause to particularly notice here, but will presently comment upon it.

This does not mean that the State Engineer shall file any statement about any water right not *involved in such action.* In a general adjudication suit the State Engineer's report should cover all data and other information necessary to enable the court to proceed to an orderly determination of the matters in controversy.

The phrase *"if so ordered by the court"* used in Section 100-4-3, R. S. U. 1933, and the phrase *"the court, in its discretion,"* used in Section 100-4-18, R. S. U. 1933, are synonymous.

The intent of the Code Commission was to make the duties of the clerk of the district court and the duties of the State Engineer discretionary with the court.

The intent of the 1939 legislature was to reintroduce into the law the statutory notice, and require the mandatory duties of both the clerk of the district court and the State Engineer by eliminating the court's discretion; and the legislature did, or thought it did, by deleting the phrase *"if so ordered by the court,"* and again requiring the performance of the ministerial mandatory duties of both the

clerk of the district court and the State Engineer, restore the statute to its original status, as provided originally in Section 22 of Chapter 67, Laws of Utah 1919.

Section 22 of Chapter 67, Laws of Utah 1919, provided that upon the filing of any suit for the determination of water rights the clerk of the district court shall notify the State Engineer that such a suit has been filed, whereupon the State Engineer shall as expediously as possible prepare and file with the court a statement giving the names and addresses of all of the claimants to the use of water from the river system or water source *involved in such action*.

Section 100-4-3, R. S. U. 1933, as amended by Chapter 112, Laws of Utah 1939, applies to all actions for determination of water rights, and the language used means exactly what it says—that upon filing any action for the determination of water rights the clerk of the district court shall notify the State Engineer that such has been filed, whereupon the State Engineer shall as expediously as possible prepare and file with the court a statement giving the names and addresses of the claimants to the use of water from the river system or water source *involved in such action*.

*"Involved in such action,"* of course, means the extent of the demand or claim of the plaintiff whether it be a demand for an adjudication of the whole river system, or water source, involving the "use" of all the "users" of the water from all that river system or water source, or only the "use" of a part of the water involving only a part of the "users" of the water from a part of the river system or water source; the latter type of action being a limited private action or a so-called private suit comparable to the example given by Mr. Justice PRATT.

However, as pointed out to this Court by Hon. James A. Howell, as amicus curiae, if there is a conflict between the provisions of Chapter 112, Laws of Utah 1939, and the provisions of other sections of Title 100, R. S. U. 1933,

which in my opinion there is not, then the 1939 amendment being the last pronouncement of the legislature upon the subject must necessarily take precedent over all other laws on the subject in conflict therewith. And, if there are laws in conflict therewith, or if the statutes are capable of admitting the construction of those members of this Court who have construed Section 100-4-3, R. S. U. 1933, as amended, cover only a general determination of water rights, as counterdistinguished from a partial or "use" determination of water rights, of a river system or water source, by reason of any thing contained in Section 100-4-18, R. S. U. 1933, then requiring a bond where a second adjudication is sought by an individual, that statute and all other statutes under the provisions of Title 100, R. S. U. 1933, are in conflict with the provisions of Chapter 112, Laws of Utah 1939, and such statutes are by *implication* repealed, and Chapter 112, Laws of Utah 1939, is to be given full force and effect.

Possibly my learned associates fail to appreciate that by the Act of 1919, all existing laws on the *subject* were repealed. Possibly this is the crux of the whole situation. Possibly the code commissioners failed to appreciate that situation. But these "possibilities" are not urged as mere conjectures, since it is presumed decisive action would not be taken upon an important administrative act without ample study of the legislative history of the act.

Certain features of the Act of 1919 were taken from laws then existing. Possibly a study of the legislative history of the act reveals that before A. D. 1919 there was no statutory provision providing for a remedy for an individual, but instead the State Engineer alone, or when properly requested, could bring an action for a general adjudication, and the fact that the 1919 Act changed the existing order should be considered as indicative of the legislative intent, but I shall not pause to particularly notice it, because to do so would not only require a careful analysis of the legislative history of the act, but to go into that

detail would extend the opinion further in length than I care to do at this time. See Title 55, Compiled Laws of Utah 1917. This is an administrative act.

The sections of the 1919 Act and the section of the 1933 Statutes, must be construed with reference to each other as laws in pari materia.

These statutes can be construed without destroying the force and effect of either or any of these statutes, including Section 100-4-19, R. S. U. 1933, requiring bond for the second and subsequent adjudication.

But, if the statutes can not be construed so as to give all of them force and effect, then Chapter 112, Laws of Utah 1939, must by implication take precedence.

I construe Section 100-4-18, R. S. U. 1933, quoted by Mr. Justice PRATT as a grant of additional power to the Court, and intended to *enlarge* the Administrative Act, not *restrict* it. My opinion is that the majority on this point are applying the reverse or restricted rule.

I believe, under Section 100-4-18, R. S. U. 1933, that a "two-penny" suit of the type mentioned by Mr. Justice PRATT is the type of action in which the court could exercise its discretion under that statute, and order a general adjudication, but when the court exercises such discretion it does so as a court function, and the "two-penny" suit abates until the statutory general adjudication action has been determined, whereupon the "two-penny" suit recurs for such additional consideration as the plaintiffs may be entitled to receive, and as the demands of justice may require.

If the general adjudication procedure affords the plaintiff adequate relief, then the "two-penny" suit Mr. Justice PRATT mentions would be satisfied, but if not would again become a live issue to settle all issues the statutory action did not satisfy. In other words, a plaintiff's right of action can not be destroyed.

A plaintiff can be required to resort to a statutory remedy where one is provided by law. The majority hold there

is no statutory remedy available to an individual, and, at the same time, hold that an individual can not proceed in a non-statutory manner to secure a general adjudication. And, if such holdings are true and consistent, then the defendants are correct in their claims that they are without remedy save in a court of equity.

In addition to the inconsistencies noted here, the majority are making another mistake, in my opinion, in deciding this case on grounds and theories that are not issues in this case, and not claimed on either side, and not in controversy. Such action is based on doubtful analogy and rests upon unsound assumptions of likeness between actual cause and effect relation and simple sequence of events. This post ergo propter fallacy extends the faulty reasoning into the theory that the "two-penny" suit referred to by Mr. Justice PRATT calls into existence the facts upon which the court acts when in its discretion it orders a general adjudication. The facts which actuate the Court into exercising its discretion to require the general adjudication were in existence before the "two-penny" action was filed and it is not the "two-penny action but the facts which appeal to the reason of the Court in ordering the general adjudication, just as the facts in this case that appeal to the majority of this Court, and compel the majority to suggest to the lower court the desirability of exercising its discretion in the case to order a general adjudication as a court function, and not anything the defendants (plaintiffs below) have alleged in their complaint.

It is the duty of this Court to decide issues that are drawn, argued and presented. Such issues are in the nature of assignments of error. Such issues should not be thrown aside and decision rendered based upon foreign and extraneous consideration. By that statement I do not mean that the court must accept as its alternative one or the other theories presented, but I do mean without any degree of equivocation that this Court is in duty bound, if not

legally required, to decide the questions presented. In this case the attorneys have filed exhaustive briefs presenting questions on pleadings, practice and procedure and the majority says: "No question of pleadings involved." The Court should determine the issues presented, but, in my opinion, the majority have not determined the issues presented in this case one way or the other. The facts govern, not the simple sequence of events.

It has not come to my attention any court in Utah, under any circumstances, has ever ordered a general adjudication. Should the district court avail itself of the majority suggestion in this case and adopt that procedure, this will be the first time such procedure has been employed in Utah.

The original opinion in this case directed the court to strike from that complaint the irrelevant matter and allow the plaintiffs to proceed in the lower court under Section 100-4-3, R. S. U. 1933, as the statute provides the defendants (plaintiffs below) have a right to do.

There is no necessity for the court to concern itself with whether the State Engineer or the district court under some circumstances could require a general adjudication of any water right. The fact is that this is an administrative act and should be construed so as to make it operative if it can be so done without violating State or Federal Constitutions. The fact is that whether the State Engineer intervenes and demands a general adjudication or the district court ordered a general adjudication, neither of them have so done, and, under what circumstances they may or may not so do is a moot question, which I shall pass without further comment.

Title 100, R. S. U. 1933, is a statutory method for determining water rights in the State of Utah.

The popular meaning of the word "determine" according to almost any dictionary means:

1.  To set bounds or limits,
2.  To bring to a close, to terminate.

3. To fix conclusively or authoritatively,
4. To come to a decision concerning.

The phrase "to quiet title" as applied to titles means when a litigant has some claim hanging over his title for determination, which, if enforced, may subject him to loss, applies to a court to have his rights presently determined for once and forever, and to have the claim against his rights immediately enforced, or to be presently made secure against any future liability. The statute provides a remedy for the determination of water rights in the State of Utah, which is synonymous with quieting title to water rights in the State of Utah.

The plaintiffs in the district court action seek an equitable remedy, because they claim they are without a remedy except in a court of equity, and the majority are, in effect, remanding this case to the district court without deciding the issues that have been presented here, and without a determination of the litigants' rights, although an action to quiet title may be said to be a proceeding in a court of competent jurisdiction to determine a litigant's rights against an invasion, which need not be imminent or certain, but which may be only future and contingent. It is an anticipatory action of equitable origin and essentially equitable in its nature. The case was presented to this Court and briefed and defended as an equitable action; no party litigant has laid any claim to the contrary, and do not now so claim.

The court is confronted with certain legal questions that should be interpreted by this Court from strictly legal principles. Either the plaintiffs below stated a cause of action in their complaint or they did not.

We are concerned with the question of pleadings because a statutory remedy is provided. If the statutory remedy is applied, the pleadings differ from the theory of the plaintiffs below in the district court. There can be no doubt that the plaintiffs in the district court proceeded upon the theory that the statutory method for the determination of water rights was inadequate, and being inadequate they

claim they were justified in appealing to the equitable powers of the court to afford them relief. And upon that theory they have proceeded thus far. And to establish that theory they have alleged much immaterial, irrelevant and redundant matters.

The majority of this Court are now denying these defendants relief without deciding the case on the questions presented by the litigants upon the issues drawn between the parties. The Court is also holding that no question of pleadings is involved. I shall not stop to review that question further, because the mere statement of the contention, in the light of its environment, suffices to destroy it.

In addition to a number of questions not necessary to point out, there are other reasons why the defendants (plaintiffs in the district court) should be prohibited from proceeding in equity. It is impossible under the code of civil procedure in force in the State of Utah for plaintiff to be without a remedy. As I have pointed out in the main opinion, Article 8, Section 19, of the Constitution of the State of Utah is as follows: "There shall be but one form of civil action, and law and equity may be administered in the same action," and Section 104-7-2, R. S. U. 1933 provides that whatever relief the plaintiff may demand shall be stated in ordinary concise language. When that has been done, the relief which the law affords will be administered through the accepted doctrines of the common law, and the relief which equity affords will be applied by the court itself from the precepts and principles of the equitable system of jurisprudence.

Therefore, if there is any theory upon which a plaintiff is entitled to recover, if he states the facts upon which he seeks to recover in concise language the court will grant that relief, if statutory, otherwise according to accepted doctrines of common law, or the equitable system of jurisprudence which are guides to decisions of cases within the original jurisdiction of our district courts.

If the majority are correct in holding that plaintiffs below can not proceed in a non-statutory manner to secure a general adjudication of the water rights, then the non-statutory allegations of the complaint of the defendants (plaintiffs below) are not material allegations in the pleading and should be stricken under the provisions of 104-13-12, R. S. U. 1933. And this includes all of paragraphs 11, 12 and 13 of the complaint, and without pausing to point out other immaterial allegations,other than to say all other allegations purporting to allege an equitable action should be stricken.

Plaintiffs cannot maintain a so-called equitable action filed in the district court, because where the law provides a particular remedy for the redress of a given wrong the injured person must resort to that remedy alone, and cannot appeal to the equitable powers of the court, which may be exercised only where there is no expressed law. *Amrheim* v. *Champion*, 9 Orleans App. 246; Louisiana and Southern Digest Actions.

The sole question, therefore, to be considered is whether the amendment of Section 100-4-3, R. S. U. 1933, by the enactment of Chapter 112, Laws of Utah 1939, withdrawing the court's discretion and making it mandatory to proceed according to the statutory method, violated any known right of the defendants. On that question the majority of us agree that no rights of the defendants here (plaintiffs below) were violated.

I, therefore, concur with Mr. Justice PRATT in denying the rehearing based on the opinion I wrote in this case (104 P. 2d 353) but, otherwise, dissent except as my position has been set forth above.

MR. DONOUGH, J., being disqualified did not participate herein.