409 P.2d 616

**ORDERVILLE IRRIGATION COMPANY, a corporation, Mt. Carmel Irrigation Company, a corporation, Henry Carroll, Merrill Mac Donald, Howard Spencer, Lyle Chamberlain, M. G. Holgate, Frank Heaton, Fred Major, Duke Aiken and Duncan MacDonald, Plaintiffs and Respondents,**

v.

**GLENDALE IRRIGATION COMPANY and Wayne D. Criddle, Utah State Engineer, Defendants and Appellants.**

No. 10325.

Supreme Court of Utah.

Dec. 30, 1965.

Phil Hansen, Atty. Gen., Dallin W. Jensen, Asst. Atty. Gen., Sam Cline, Milford, for appellants.

Olsen & Chamberlain, Ken Chamberlain, Richfield, for respondents.

CROCKETT, Justice:

This is a contest over claimed priorities in the rights to use the waters of the East Fork of the Virgin River located in Kane County, Utah.

Defendant, Glendale Irrigation Company, contends that it is entitled to priority in

taking water represented by its shares before any water is available to the plaintiffs; whereas, the plaintiffs, Orderville Irrigation Company, Mount Carmel Irrigation Company, et al. contend that their rights to use the waters of that stream are on a par with those of the defendant, and that whatever water is available should be allocated on a share-and-share-alike basis.

Upon the essential documentary evidence, mutual responses to interrogatories and the depositions of witnesses, which appear to be substantially the evidence which would have been available on a trial both parties moved for summary judgment which the district court granted in accordance with the plaintiffs' contentions. Defendants appeal.

The first adjudication of water rights in the East Fork of the Virgin River was under what is called the "McCarty Decree" of April 1900. Therein the rights of the users were allocated on the basis of 1200 plus shares to water the same number of acres of ground. There was no specification as to priority dates. Each share was treated as having an equal right to whatever water was available on a proportional basis.

Pursuant to the general adjudication statute, which was enacted as Chapter 67, S.L.U.1919,[1] such a proceeding was instituted in 1923 to determine all of the water rights in the Virgin River system. The initial decree in that proceeding, known as the "Burton Decree" was entered December 12, 1925. In 1931 the court made the final decree in that case, which is known as "The Cox Decree." In both of these decrees the dates of origin of the various rights are listed, including those of the principals to this litigation. Defendant Glendale Irrigation Company was given a date of 1865, while dates of the rights of the plaintiffs, Mount Carmel Irrigation Company and Orderville Irrigation Company, were listed as 1870 and 1871 respectively.

The evidence shows that from time immemorial and prior to the McCarty Decree of 1900, the parties hereto in using the waters of the East Fork of the Virgin River took distribution on a basis proportional to their respective shares; and that this continued to and including the 1960 season. It also appears that if the waters of this stream were allocated on the basis of date priority as contended by the defendant, the other users, except defendant, would receive little or no water in years of shortage; and that such years of water shortage appear to be more the rule than the exception. In the spring of 1961, the State Engineer, acting in accordance with the claims of defendant Glendale, that it was entitled to take all of its water under first priority by reason of the Cox Decree, first ordered distribution of the water on that

1. Now 73-4-1, et seq., U.C.A.1953.

basis. In October of that year the plaintiffs brought this action, claiming water for their shares on the share-and-share-alike proportional basis.

The first argument of the defendant Glendale to be dealt with is that because the Burton and Cox Decrees listed priority dates and no appeal was taken therefrom, the plaintiffs are now precluded from attacking it by the principles of res judicata, laches, and the statute of limitations. The contrary position is that the rights of the parties were established by the earlier McCarty Decree which specified no priorities; and that in the adjudication which resulted in the Cox Decree the issue as to the right to use water according to date of priority was not litigated; and that the listing of the dates was never intended by the court nor by the parties, to change their rights to take water on a basis proportional to their shares as they had always been recognized.

In regard to the plea of res judicata and too long delay in filing this action, it is not to be doubted that whatever issues were litigated and adjudicated by the Cox Decree are now concluded and cannot be raised.[2] But it is important to keep in mind that we are not here concerned with the usual type of judgment.

An adjudication as to the allocation of flowing water, the amount of which necessarily fluctuates from time to time, is a decree in equity as to the rights in their continuing use. It is inherent in the nature of such a decree that the court has continuing jurisdiction, when properly invoked, to see that its provisions are being complied with. Where disputes arise as to the manner or amount of use; or where there are uncertainties in the decree which give rise to a genuine dispute as to the rights of the parties concerning the use of such waters, neither the rule of res judicata nor the statute of limitations prevents resort to the courts to settle such a controversy. Under the facts here shown the answer to the defendant's claim of laches is readily apparent. The plaintiffs have not slept on their rights any more than has the defendant Glendale by not actually taking the water it claims the Cox Decree entitled it to until the season of 1961, when this action was brought.[3]

The parties single out and place emphasis on the portions of the Cox Decree which they regard as favorable to their positions. The decree itself is extensive and complex as are the proceedings and the history which produced it. Without going into extensive detail as to the specification of the water

2. See 2 Freeman, Judgments, § 676 (5th Ed. 1925).

3. For a discussion of laches where the parties assert adverse claims and nei-

ther has made a move, see the recent case of Walker v. Walker, 17 Utah 2d 53, 404 P.2d 253.

rights of these parties as reflected thereby, it can be said advisedly that it is not clear therefrom whether it was intended that these parties were to receive water proportionate to their shares, as contended by the plaintiffs, or on the basis of date priority, as contended by the defendant; and there is no showing that issue was joined on this question, or that it was litigated or intended to be litigated and settled by that decree. This further fact seems quite significant. In the paragraph relating to classification of rights, there are three general classes of water rights set forth in that decree. Class 1 includes those listed as dating prior to 1891; Class 2 includes those from 1891 to 1903; and Class 3 those subsequent to 1903. As to the first two classes it does not mention that the rights are to be regulated according to date priority, but as to the third class, it is stated:

> All rights initiated by application under the Act of March 12, 1903 and subsequent acts are included in Class 3, *and take their priority within this class according to their status in the office of the State Engineer.*

The express indication that the rights in Class 3 take priority according to their filing with the State Engineer could well be taken

as implying that no such priority was intended to the shares as within Classes 1 and 2. The maxim expressio unius est exclusio alterius, meaning where one is expressed others are excluded, is applicable here.[4] All of the shares involved in this suit are in Class 1 except one share owned by plaintiff Orderville Irrigation Company which is in Class 2.

■■ Due to the facts above recited and to the uncertainties with respect to the priorities in water rights in dispute between these parties, it was proper for the trial court to look to the background circumstances and to consider extraneous evidence in determining what was intended by the adjudication of water rights in the Cox Decree. It is generally held that the interpretation and application the parties adopt and abide by is some evidence of their intent. This is especially so if it is acquiesced in for a long period of time, and it should not be changed by the parties or by the courts except for cogent and persuasive reasons.[5]

The plaintiffs call attention to the further important and persuasive fact that in the general adjudication case which resulted in the Cox Decree, the defendants took a position contrary to their present conten-

4. 35 C.J.S., p. 340.

5. Trapp v. Gordon, 366 Ill. 102, 7 N.E.2d 869; Allendorf v. Daily, 6 Ill.2d 577, 129 N.E.2d 673; Merryweather v. Pendleton, 91 Ariz. 334, 372 P.2d 335.

tion.[6] In response to the State Engineer's proposal therein that the waters of the Virgin River system be distributed according to time priorities, the parties to the instant action, including the defendant Glendale, joined in filing an "Objection" in which they stated that all shares dating prior to 1890 (this would be the shares in Class 1) should have the same priority. This was in accordance with the McCarty Decree with which these parties have lived for substantially sixty years and under which their water rights were not dependent on date priority, but upon equal portions of water for shares held.

Acceptance and adherence to that decree during all that time is sustained by the evidence in this case including the witnesses the defendant Glendale indicated it would rely on at the trial, and whose depositions were taken by the plaintiff. They were the incumbent president, and several past presidents of the Board of Glendale Irrigation Company. Typical is that of Charles Anderson. He testified that the Board of Directors of Glendale:

"* * * knew nothing of any decree only the McCarty Decree and *they wanted that upheld* and that was our instruction when we went down, both Bishop Sorensen and myself."

In response to questions concerning the distribution of water to Glendale after the general adjudication was completed, Mr. Anderson further testified:

Q. Now, after the Burton Decree was entered did Glendale's rights change in any way?

A. No, only that in the Burton Decree the priority dates were mentioned and they weren't in the McCarty Decree.

Q. All right. As a result of that did Glendale start getting more water?

A. No, they didn't the company kind of *went on a share and share alike basis.*

* * * * * *

Q. How long did that last?

A. Oh, it lasted until the time the Glendale Irrigation Company asked the State Engineer to grant them whatever rights they have.

From testimony of this character, and from what has been said herein, there is substantial basis in the evidence to justify the judgment arrived at by the trial court that the ownership of the parties hereto including the defendant, Glendale Irrigation Company, in rights to the use of the waters of the East Fork of the Virgin River, is on

6. That a contrary position deliberately taken and relied upon in a prior judicial proceeding is strong evidence against a later inconsistent position and in some instances has been held an estoppel to do so, see Hatten Realty Co. v. Baylies, 42 Wyo. 69, 290 P. 561, 72 A.L.R. 587; and also 31 C.J.S. Estoppel § 121.

a basis proportional to the shares held and without regard to date priority, in accordance with the McCarty Decree; and that this was not changed by the Burton and Cox Decrees hereinabove referred to.

■■ The defendant charges the trial court erred in failing to disqualify himself because of an affidavit of prejudice they filed pursuant to Rule 63(b), U.R.C.P. stating that he had made certain statements to some of the parties involved indicating that he favored the position of the plaintiffs. These observations are pertinent: The first is that the expressions are alleged to have been made, and the affidavit was filed, after the pretrial hearing.[7] There is nothing strange or unnatural in the judge forming some impressions as to the merits of the controversy at the pretrial hearing; nor in the fact that he might forthrightly say so.[8] Such an expression of his views does not in and of itself show any disqualification to proceed with the trial. This would result only when it appeared that, apart from his analysis of the issues of fact or law, he had such a bias in favor of one party or prejudice against the other that he could not fairly and impartially determine the issues. This situation was not shown to exist here. In accordance with the rule, the question of the sufficiency of the affidavit was referred to another district judge who concluded that the affidavit did not show any disqualification of the trial judge. (All emphasis ours.)

Affirmed. Costs to plaintiffs (respondents).

HENRIOD, C. J., and McDONOUGH, WADE and CALLISTER, JJ., concur.

opinion of Chief Justice Wolfe who stated, "I see no reason why a trial judge should be little more than part of the furniture and perhaps with little adornment value at that."

---

7. As to timeliness of filing such an affidavit, see Lepasiotes v. Dinsdale, 121 Utah 359, 242 P.2d 297.

8. See McCollum v. Clothier, 121 Utah 311, 241 P.2d 468, particularly concurring