MERIDIAN DITCH COMPANY, INC., a Utah corporation, Plaintiff and Respondent,

v.

KOOSHAREM IRRIGATION COMPANY and Dee C. Hansen, State Engineer of the State of Utah, Defendants and Appellants.

MERIDIAN DITCH COMPANY, INC., a Utah corporation, Plaintiff and Respondent,

v.

KOOSHAREM IRRIGATION COMPANY, a Utah corporation, Defendant and Appellant.

No. 17840.

Supreme Court of Utah.

Feb. 16, 1983.

Joseph Novak, David L. Wilkinson, Atty. Gen., Dallin W. Jensen, Asst. Atty. Gen., Salt Lake City, for defendants and appellants.

Ken Chamberlain, Richfield, for plaintiff and respondent.

HALL, Chief Justice:

In this action to have the State Engineer's determination of the extent of plaintiff Meridian Ditch Company, Inc.'s (hereinafter Meridian) water rights in Otter Creek affirmed and amplified, defendant Koosharem Irrigation Co. (hereinafter Koosharem) appeals an adverse summary judgment on the grounds that genuine issues of material fact raised in the pleadings preclude the entry of summary judgment, and that the order is irreconcilable with the record. We affirm.

In 1879, Meridian and Koosharem began diverting water from Otter Creek at the mouth of Daniels Canyon for distribution to their respective stockholders. Some 18 years later (1897), Koosharem constructed a dam (Koosharem Reservoir Dam) and reservoir (Koosharem Reservoir) some distance below the mouth of Daniels Canyon along the natural channel of Otter Creek. This dam and reservoir are currently operational. Approximately one and one-half miles below its reservoir, Koosharem maintains another dam (Koosharem Diversion Dam), which serves to divert Koosharem's portion of the Otter Creek waters into its distribution canal. Nearly one mile further below, Meridian operates its diversion dam (Meridian Dam).

In 1906, entitlements to the waters of the Upper Sevier River System, including Otter Creek, were adjudicated in the case of *Richfield Irrigation Co. v. Circleville Irrigation Company* (Sixth Judicial District Court, Sevier County). The resulting judgment, known as the "Morse Decree," affirmed the existing direct flow rights of Meridian and Koosharem, as well as Koosharem's surplus storage right in its reservoir.

Again, in the early 1920s, general adjudication proceedings were commenced for a determination of water rights on the Sevier River.[1] Meridian and Koosharem filed water user's claims asserting their rights predicated upon the Morse Decree.[2] In 1936, a final decree was entered, known as the Sevier River Decree or "Cox Decree." The Cox Decree, employing nearly the identical language used in the Morse Decree, declared the rights of Meridian and Koosharem to the Otter Creek waters as follows:

### KOOSHAREM IRRIGATION COMPANY

Two-Tenths (2/10ths) of the waters of OTTER CREEK, measured at the mouth of DANIELS CANYON; also sufficient of the waters of Otter Creek measured below the reservoir of the Koosharem Irrigation Company and above its headgate, to aggregate, together with said two-tenths of the waters of Otter Creek for use during the entire year 18 c.f.s.

### MERIDIAN DITCH

One-Tenth (1/10th) of the waters of OTTER CREEK measured at the mouth of DANIELS CANYON; *also sufficient of the waters flowing above the dam of said company* which, including the above-mentioned one-tenth (1/10th) of the waters of Otter Creek, will aggregate 10 c.f.s. from April 15th to June 15th and during the remainder of the year 6 c.f.s. [Emphasis added.]

Prior to approximately 1936, the parties' shares of the Otter Creek waters were con-

---

1. *Richlands Irrigation Co. v. West View Irrigation Co.,* Civil No. 843, Millard County.

2. Both Meridian and Koosharem authorized the court by stipulation to rely upon the Morse Decree in adjudicating their rights.

veyed from the mouth of Daniels Canyon by a canal (South Ditch) which bypassed the Koosharem Reservoir on the east and discharged the water back into Otter Creek near the Koosharem Diversion Dam. The waters were then divided two-thirds to Koosharem and one-third to Meridian with Koosharem's two-thirds share going directly into its canal and Meridian's one-third share going back into the channel below the Koosharem Diversion Dam and above the Meridian Dam.

Sometime between 1936 and 1940, the South Ditch was relocated and Meridian's and Koosharem's waters were directed into the Koosharem Reservoir. Thereafter, notwithstanding the Morse and Cox Decrees awarded Meridian 10 c.f.s. of the Otter Creek waters during two months of the year and 6 c.f.s. during the remaining months, Koosharem released from the reservoir, as Meridian's share, a mere 1.5 c.f.s.[3] Koosharem's share was commingled with its storage waters in the reservoir and released therefrom at its call for rediversion at the Koosharem Diversion Dam.

As the result of complaints lodged by both Meridian and Koosharem, the State Engineer convened a hearing on September 12, 1978, to determine the proper distribution of the waters of Otter Creek, as to these parties, in accordance with the terms of the Cox Decree. The decree allocates one-tenth of the waters coming out of Daniels Canyon to Meridian and two-tenths thereof to Koosharem. In addition, the decree awards each company augmented water rights out of different segments of the Otter, other than Daniels Canyon. Koosharem's augmented rights are specifically limited to a segment of the Otter "measured below the reservoir of the Koosharem Irrigation Company and above its [Koosharem's] headgate," while Meridian's augmented rights are not limited to a particular segment of the creek; rather, they include "sufficient of the waters flowing above the dam of said [Meridian] Com-

pany." The language of the decree specifying Meridian's augmented water rights was identified by the State Engineer as the core of the controversy, inasmuch as it does not specify what the word "above" encompasses.

The State Engineer issued his memorandum decision on January 16, 1979. In substance, that decision directed that (1) Meridian and Koosharem's share of three-tenths of the waters of Otter Creek as measured at the mouth of Daniels Canyon be delivered into the ditch which empties into the Koosharem Reservoir; (2) the said three-tenths less ditch losses as measured into the Koosharem Reservoir be released by Koosharem into Otter Creek; (3) the one-tenth share of Meridian as measured into the Koosharem Reservoir bypass the Koosharem Diversion Dam; (4) the remaining two-tenths share of Koosharem plus any accretions above the Koosharem Diversion Dam and below the Reservoir Dam, but not to exceed 18.0 c.f.s., be diverted at the Koosharem Diversion Dam into Koosharem's canal; (5) the one-tenth share of Meridian as measured at the bypass of the Koosharem Diversion Dam, together with any water which may aggregate between the Koosharem Diversion Dam and the Meridian Dam, be diverted into the Meridian ditch but not to exceed the maximum flow as stated in the decree; and (6) a series of measuring devices be installed and the cost be borne by Meridian and Koosharem.

On March 12, 1979, Meridian filed this action seeking review of the State Engineer's memorandum decision, naming Koosharem and the State Engineer as defendants. The relief sought was a declaratory judgment to the effect that the memorandum decision be amended and supplemented to declare Meridian's entitlement to that portion of the Otter Creek waters formerly designated (in the Cox Decree) as Meridian's share, and further that an injunction be issued enjoining Koosharem

---

**3.** Although Koosharem alleges that a deputy river commissioner during the period between 1936 and 1940 adjusted the rights of Meridian to 1.5 c.f.s. continuous flow throughout the entire season, no documentation or other adequate form of proof was offered to verify that allegation.

from further interference with Meridian's water rights. Koosharem responded by filing an answer and counterclaim against Meridian, and a cross-claim against the State Engineer, wherein Koosharem sought to have certain provisions of the memorandum decision reversed and/or modified.

Meridian concurrently filed an action against Koosharem, seeking a declaratory judgment of Meridian's water rights, damages and injunctive relief against future interference by Koosharem in Meridian's water rights. Koosharem's answer and counterclaim sought confirmation of its alleged exclusive rights to the waters impounded in the Koosharem Reservoir and all inflow waters accumulating in the Otter between Koosharem's reservoir and diversion dam.

The court consolidated these two actions, whereupon the parties filed motions for partial summary judgment. Meridian's motion sought to have the State Engineer's memorandum decision affirmed in part, and modified to amplify its augmented water rights. Koosharem's motion sought construction of certain pertinent provisions of the Cox Decree, affirmation in part and modification in part of the State Engineer's memorandum decision, and a declaration that Meridian did not have storage rights in Koosharem's reservoir.

The trial court granted Meridian's motion for summary judgment, thereby affirming the memorandum decision in part and modifying it to extend its augmented water rights to include all waters above its dam "without limitation as to the zone or segment of Otter Creek from which said waters are realized and including all water which aggregates above the defendant Koosharem Irrigation Company's dam." Additionally, the court enjoined Koosharem

from interfering with the free flow of waters to Meridian's point of diversion.

The central issue on appeal is the correct interpretation of the provision in the Cox Decree relating to Meridian's augmented water rights in the Otter Creek. These rights are defined in the decree as "sufficient of the waters flowing *above* the dam of said [Meridian] company." (Emphasis added.) Koosharem contends that the underscored word "above" is ambiguous, and that sufficient conflicting evidence as to the meaning and scope of this word was presented in the trial court to create a "genuine issue of material fact" and thereby preclude summary judgment.[4] Moreover, defendant argues that an ambiguity, in and of itself, can make summary judgment inappropriate.[5]

To support its position as to the correct interpretation of the provision, Koosharem attached certain documents to its motion for partial summary judgment setting forth the historical development of Koosharem's and Meridian's water rights to the Otter, which culminated in the Cox Decree of 1936. Such documentation allegedly establishes that, excluding surplus flow, Koosharem's augmented portion includes all of the inflow and accretions to the Otter below the Koosharem Reservoir Dam and above the Koosharem diversion dam, while Meridian's augmented portion is limited to the inflow and accretions to the Otter below the Koosharem diversion dam and above the Meridian diversion dam. While Koosharem admits that this documentary evidence is extrinsic, it maintains that such evidence is appropriate, given the ambiguous character of the provision. Koosharem points out that an ambiguous judgment is subject to construction according to the rules that apply to all written instruments,[6] and that

4. Pursuant to Rule 56, Utah R.Civ.P., summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Bowen v. Riverton City,* Utah, 656 P.2d 434 (1982); *Amjacs Interwest, Inc. v. Design Associates,* Utah, 635 P.2d 53 (1981).

5. *Amjacs Interwest, Inc. v. Design Associates, supra,* n. 4; *West v. West,* 15 Utah 2d 87, 387 P.2d 686 (1963).

6. *Moon Lake Water Users Association v. Hanson,* Utah, 535 P.2d 1262 (1975).

such rules of construction allow parol or extrinsic evidence.[7]

Koosharem also maintains that Meridian conceded the ambiguity of the provision by submitting extrinsic evidence in support of its motion for partial summary judgment to clarify the provision's meaning. The evidence submitted by Meridian, characterized by Koosharem as extrinsic, consisted of certified copies of documents and records from the Cox (*Richlands Irrigation Company v. West View Irrigation Co., supra*) proceedings.

Neither the State Engineer nor the trial court conceded the ambiguity of this particular provision of the Cox Decree, and neither do we. The language is clear and can therefore be construed upon its face. Koosharem's augmented rights are clearly limited to the segment of the Otter between the Koosharem Reservoir Dam and diversion dam, while Meridian's augmented portion extends unequivocally to the entire channel *above* the Meridian Dam. Being thus unambiguous, it would be superfluous, and moreover, inappropriate, to consider extrinsic evidence in determining the provision's meaning.[8] Consequently, Koosharem's evidence documenting the historical development of water rights to the Otter, being extrinsic to the record of the Cox proceedings, is inadmissible. Likewise, Meridian's evidence regarding the meaning of the provision, if extrinsic to the record as Koosharem so alleges, would be inadmissible. However, Meridian's evidence is not extrinsic to the record; it is, in fact, a part of the record of the Cox proceedings, being certified copies of documents and records thereof. Such evidence is therefore admissible to reinforce the clear intent of the provision.[9]

Koosharem next contends that the judgment changes the language of the Sevier River Decree and abrogates its vested water rights. The specific language of the decree allegedly changed by the summary judgment is the provision relating to Meridian's augmented water rights. Koosharem avers that the trial court's conclusion that "no limitation as to the zone or segment of Otter Creek from which said waters are realized" changes the language in the decree, to wit, "also sufficient of the water flowing above the dam of said [Meridian] company," and thereby preempts Koosharem's augmented portion of the Otter Creek waters.[10]

We do not find the trial court's construction of this provision to be at variance with the literal and ordinary meaning thereof, nor do we agree that this construction preempts Koosharem's augmented rights. The fact that the trial court's construction effects an overlapping of the parties' augmented rights as to that segment of the creek between Koosharem's dams does not suggest that either may be preempted by the other in the use of those particular waters. To preempt is to seize upon to the exclusion of others. The provision certainly does not contemplate exclusive rights in the use of these waters by either party; it rather provides that waters coming into the Otter's channel in that particular area be divided between the parties in accordance with their proportionate necessities, not to exceed their respective maximum allotments.

Koosharem further avers that the trial court's construction of this provision conflicts with its primary year-round storage right in its reservoir[11] insofar as it extends

7. *Continental Bank & Trust Co. v. Bybee*, 6 Utah 2d 98, 306 P.2d 773 (1957).

8. See 30 Am.Jur.2d *Evidence* § 1079, pp. 224, 225.

9. See *Salt Lake City v. Telluride Power Co.*, 82 Utah 607, 17 P.2d 281 (1932); *Kent v. Smith*, 62 Nev. 30, 140 P.2d 357 (1943). See also, 73 Am.Jur.2d *Summary Judgment* § 13, p. 734.

10. Koosharem's augmented water rights, as set forth on page 25 of the Cox Decree, are "sufficient of the waters of Otter Creek, measured below the reservoir of Koosharem Irrigation Company and above its headgate."

11. Koosharem's storage right in its reservoirs, found on page 25 of the Cox Decree, is as follows:

     Koosharem Irrigation Company, out of the waters of Otter Creek, to be stored in a

Meridian's augmented water rights "to the headwaters of the tributaries of Otter Creek." Such a construction, according to Koosharem, would require all inflow into the reservoir, including seeps and springs within and around the perimeter of the reservoir and return flow from the irrigation of lands adjoining the reservoir to pass through and be made available to Meridian at its downstream dam.

In response to this averment, Meridian asserts that its rights to the entire Otter Creek channel, having been appropriated and perfected prior to the construction of Koosharem's reservoir, have priority over Koosharem's reservoir storage rights. Cited as authority for this position is U.C.A., 1953, § 73–3–21, which reads in pertinent part:

> Appropriators shall have priority among themselves according to the dates of their respective appropriations, so that each appropriator shall be entitled to receive his whole supply before any subsequent appropriator shall have any right . . . .

As additional support, Meridian refers to *Water and Water Rights* 126 (Allen Smith Company, Vol. I), which articulates the "cardinal rule of Western Water Law" as follows:

> Since priorities refer to successive appropriations, each appropriation along a stream . . . has priority over all subsequent appropriations. A water right attaches to the point of diversion and extends to the source.

Meridian also indicates that it has no desire nor intention to interfere with Koosharem's proportionate share of the waters aggregating in the reservoir. Meridian simply "wants Koosharem to leave Meridian's water alone, to let it pass through the reservoir unimpeded, and for Koosharem to take nothing more in its Reservoir than it is strictly permitted by the

terms of the Decree." Meridian relies upon the case of *Provo Bench Canal & Irrigation Company v. Linke,*[12] where a reservoir had been constructed interrupting primary rights. This Court held:

> Out of such water the plaintiffs have the first and prior rights to the use of the amount of water which they would have been entitled to and which would have been available to satisfy their rights under the old system *had the reservoir not been constructed* . . . . [Emphasis added.]

The record shows that Meridian appropriated and perfected its rights in the Otter Creek waters some 18 years prior to the construction of the Koosharem Reservoir. Furthermore, the law clearly attaches highest priority to those rights established first in time. We therefore find no error in the trial court's summary disposition of this point.

Koosharem urges this Court to consider the "practical construction" given both the Cox and Morse Decrees by the parties over the past nearly 38 years. Koosharem asserts that in approximately 1940, after Meridian's and Koosharem's waters coming from the mouth of Daniels Canyon were rediverted into the Koosharem Reservoir, Meridian's share of waters to be released from the reservoir was reduced by the Sevier River Commissioner (LaRue Ogden) to 1.5 c.f.s. continuous flow throughout the entire season.[13] Koosharem therefore argues that since the practice and acquiescence of the parties for some 38 years has been to discharge Meridian's waters from the reservoir at the rate of 1.5 c.f.s., that rate should supplant the former rates established in the Morse and Cox Decrees. Koosharem relies upon the case of *Orderville Irrigation Co. v. Glendale Irrigation Co.,*[14] wherein the Court stated:

> is 10 c.f.s. from April 15 to June 15 and during the remainder of the year 6 c.f.s.

reservoir located in the natural channel of Otter Creek. 2088 acre feet.

**12.** 5 Utah 2d 53, 296 P.2d 723 (1956).

**13.** Meridian's share of continuous flow waters as set forth in both the Morse and Cox Decrees

**14.** 17 Utah 2d 282, 409 P.2d 616 (1965).

It is generally held that the interpretation and application the parties adopt and abide by is some evidence of their intent. This is especially so if it is acquiesced in for a long period of time, and it should not be changed by the parties or by the courts except for cogent and persuasive reasons. [Citations omitted.]

409 P.2d at 619–20.

Koosharem's reliance upon the "practical construction" doctrine is misplaced. The record does not reveal any substantiating evidence of Koosharem's claim that Meridian's share of the creek waters was officially reduced to 1.5 c.f.s., nor does it support Koosharem's claim of acquiescence. Furthermore, unlike the *Orderville* case which involved a distinct ambiguity in the subject provision, the disputed provision in this case was clear and unambiguous and could thus be construed upon its face without resorting to extrinsic evidence of practical construction.

Koosharem further asserts that the trial court's order, decree and injunction grant relief to Meridian far beyond what it sought in its motion for partial summary judgment. We find this assertion to be without merit.

This litigation resulted from the complaints and petitions of *both* Meridian and Koosharem to the State Engineer for an interpretation of their entitlements to the Otter Creek waters pursuant to the Cox Decree. The State Engineer's memorandum decision did precisely what the parties requested: it defined their respective rights to the Otter. Meridian, however, not fully satisfied with the State Engineer's interpretation, initiated this action to have that decision amended and supplemented. Specifically, Meridian prayed for an express declaration of its right to 10 c.f.s. of water from the creek from April 15 to June 15 and 6 c.f.s. of the same waters during the remainder of each and every year, and an injunction enjoining Koosharem from interfering with Meridian's rights to the Otter Creek waters. Additionally, Meridian filed its motion for partial summary judgment, wherein it requested affirmation of eight of the ten points of the memorandum decision and modification of the remaining two points, 7 and 10. Meridian prayed to have point 7 modified to include an express order

> [T]hat plaintiff is entitled to receive its one-tenth (1/10th) interest in Daniels Canyon water and also sufficient of all waters aggregating above Plaintiff's point of diversion as are necessary to meet the awards to Plaintiff set out on page 25 of the Decree and without limitation as to the zone or segment of Otter Creek from which said waters are realized and including all water which aggregates above the Defendant Koosharem Irrigation Company's dam.

As to point 10, Meridian requested it be modified to assess the expenses for purchase and installation of the measuring devices equitably between the parties.

The trial court's order granting Meridian's motion for partial summary judgment conforms precisely with the relief prayed for in its complaint and motion, as set forth above, with only one exception: that paragraph 8 of the memorandum decision be stricken instead of affirmed.[15] The order is, therefore, well within the bounds of the requested relief. The order also satisfies, and does not exceed, the request of both parties to have their rights to the Otter as set forth in the Cox Decree interpreted.

Affirmed. Costs to Meridian.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.

---

**15.** Paragraph 8 of the State Engineer's memorandum decision reads: "Any water which may be flowing down Otter Creek that is in excess of each company's respective decreed rights shall be allowed to continue downstream and shall not be diverted." The striking of this paragraph was not at issue.