2023 UT App 22

# THE UTAH COURT OF APPEALS

SECOND BIG SPRINGS IRRIGATION CO., BAKER RANCHES INC.,
OKELBERRY RANCH LLC, RAY OKELBERRY, BRIAN OKELBERRY, AND
JAKE OKELBERRY,
Appellants,
*v.*
GRANITE PEAK PROPERTIES LC, GRANITE PEAK RANCH LC,
KENNETH C. KNUDSON, AND MILLARD COUNTY,
Appellees.

Opinion
No. 20210207-CA
Filed March 2, 2023

Fourth District Court, Fillmore Department
The Honorable Anthony L. Howell
No. 170700020

John H. Mabey Jr., David C. Wright, and Brooke A.
White, Attorneys for Appellants

J. Craig Smith, Nathan S. Bracken, and Jennie B.
Garner, Attorneys for Appellees Granite Peak
Properties LC, Granite Peak Ranch LC,
and Kenneth C. Knudson

Barton H. Kunz II, Attorney for Appellee
Millard County

Sean D. Reyes, Norman K. Johnson, Julie I. Valdes,
Sarah M. Shechter, and Gordon H. Rowe, Attorneys
for Amicus Curiae Utah State Engineer[1]

---

1. The Utah State Engineer moved to file an amicus curiae brief supporting Appellants. The parties did not oppose the motion, and we granted it.

SENIOR JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.[2]

APPLEBY, Senior Judge:

¶1      This case began as an action in which Second Big Springs
Irrigation Co., Baker Ranches Inc., Okelberry Ranch LLC, Ray
Okelberry, Brian Okelberry, and Jake Okelberry (collectively,
Second Big Springs) alleged that Granite Peak Properties LC,
Granite Peak Ranch LC, and Kenneth C. Knudson (collectively,
Granite Peak) interfered with Second Big Springs' already
established water rights. But more than two years later and after
Granite Peak's joinder of twenty-five additional defendants, the
district court classified the action as a general adjudication of
water rights. Approximately sixteen months after that, the court
dismissed the case on the basis that it lacked subject matter
jurisdiction. This appeal ensued, and we reverse: general
adjudications determine only the validity, characteristic, and
ownership of water rights, and do not decide interference claims,
which involve torts against property rights.


BACKGROUND

¶2      To put this case in context, we begin with a more detailed
than usual description of its district court procedural history. This
is because the case has evolved to include more parties, and some
of those parties, as well as Granite Peak and the court itself, have
at various times altered their positions, changing the course of the
litigation over approximately four years and making the case at

---

2. Senior Judge Kate Appleby sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

this stage appear more complex than it is.[3] Despite its convoluted history, the matter on appeal is straightforward: Is this a tort case or is this a case more appropriately addressed in a general adjudication pursuant to the adjudication provisions of Utah's Water and Irrigation Code? *See generally* Utah Code §§ 73-4-1 to -24. And if this is a matter for general adjudication, should it be part of an already pending general adjudication in another district?

¶3 Second Big Springs and Granite Peak own water rights in the Snake Valley Hydrographic Basin, a groundwater basin straddling the Utah–Nevada border. Second Big Springs' rights are allegedly older than, or senior to, those of Granite Peak. This is significant because in Utah, "[a]ppropriators shall have priority among themselves according to the dates of their respective appropriations, so that each appropriator is entitled to receive the appropriator's whole supply before any subsequent appropriator has any right." *Id.* § 73-3-21.1.[4]

¶4 Second Big Springs' April 2017 complaint alleged that Granite Peak's groundwater pumping was interfering with Second Big Springs' senior water rights by depleting the aquifer, thereby "obstructing or hindering [Second Big Springs'] ability to

---

3. The district court docket has 402 entries, but no disposition has been made other than dismissal.

4. The previous version of this statute contained the same language, but it was only one subsection of the statute. Utah Code § 73-3-21.1(2)(a) (2021). The 2022 amendment deleted all other provisions of the section, leaving this language as the entirety of the section. Utah Code Ann. § 73-3-21.1 Amendment Notes (LexisNexis Supp. 2022). This language is the codification of what is known in the western United States as the prior appropriation doctrine. *See* 78 Am. Jur. 2d *Waters* § 355 (2013); Fredric J. Donaldson, *Farmer Beware: Water Rights Enforcement in Utah*, 27 J. Land, Res., & Env't L. 367, 370 (2007).

divert water." The complaint identified Second Big Springs' and Granite Peak's Utah water rights in detail, including water right numbers, priority dates, beneficial uses, allowances, and points of diversion. Second Big Springs sought, among other things, damages and injunctive relief as well as a declaratory judgment (1) confirming its seniority; (2) declaring that "Big Springs Creek, Lake Creek and their spring sources . . . are fully appropriated"; and (3) declaring that Granite Peak has no rights in those waters.

¶5 Granite Peak moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. It argued that because Second Big Springs' action was "squarely aimed at reducing or eliminating" Granite Peak's water rights, it was not an interference claim but, rather, a claim that required an adjudication of rights under Utah's water law statutes. Granite Peak also argued that its Nevada water rights were implicated in the dispute and that Utah courts lack jurisdiction to adjudicate Nevada water rights. The district court rejected the argument that Second Big Springs was claiming something other than interference with its water rights, and because the complaint alleged a tort committed in Utah, the court found jurisdiction proper here.

¶6 The action proceeded, but in August 2018, Granite Peak filed a Motion for Leave to File Third-Party Complaint, Join Parties, or Make a General Determination of Water Rights. Among other things, it argued that adjudicating the alleged interference claim would require the joinder of "all water users" in the area "whose water rights are junior to [Second Big Springs'] water rights" and that those other users "must be added as third-party defendants or joined" because "[i]t is impossible both factually and legally to make the necessary determinations or grant the relief requested in a vacuum that does not consider the diversion of water by other intermingled water users." The district court granted the motion to file a third-party complaint but denied the "request for a general determination."

¶7 Nearly two years after the action began, Granite Peak filed a Third-Party Complaint naming twenty-five additional parties. These included businesses and corporations, individuals, and government entities including the Bureau of Land Management (the BLM),[5] Millard County, and the Millard County School District (the school district). It alleged that to the extent each defendant with a junior water right caused harm to Second Big Springs, fault should be allocated proportionately. The Third-Party Complaint also identified details such as water right numbers, holders, priority dates, allowances, points of diversion, and limitations of the use of the water rights. Granite Peak sought (1) monetary damages, (2) injunctive relief, (3) curtailment,[6] (4) an award of fees and costs, and (5) a declaratory judgment "declaring Third-Party Defendants responsible for their proportionate share of damages."

¶8 Millard County and the school district responded to the Third-Party Complaint with motions to dismiss. The school district's motion stated that there was no allegation that it would be liable to Granite Peak. Millard County's motion contended the court lacked subject matter jurisdiction because no notice of claim had been served on the county, and it also noted that the "claim for injunctive relief . . . [is] a de facto equitable general determination claim, which is both statutorily precluded and subject to another court's exclusive jurisdiction." Further, to issue injunctive relief, the court would have to "determine the level of curtailment" for each claimant, and because that involved "ten or

---

5. The BLM filed a Special Appearance contesting the district court's jurisdiction over the BLM because there was "no applicable waiver of sovereign immunity."

6. A curtailment order is one reducing or restricting a party's water usage. *See generally Curtail*, Merriam-Webster, https://www.merriam-webster.com/dictionary/curtail [https://perma.cc/5288-CRT5] (defining "curtail" as "to make less by or as if by cutting off or away some part").

more claimants," it would have to proceed under the general adjudication statute. It noted that a general adjudication was pending in the Third District Court (the Tooele County general adjudication) and alleged that the Fourth District Court lacked jurisdiction.

¶9     In late October 2019, the district court orally announced a ruling on the motions to dismiss, which it granted with regard to the damages claim but not as to curtailment. It agreed to classify the action as a general adjudication because Granite Peak's joinder of so many additional potential claimants "ha[d] by statutory definition transformed [the] case." It did not agree that dismissal was appropriate but noted that the "[p]arties are well aware there is a pending general adjudication addressing the [a]ffected area already filed in Tooele County, Case No. 650306049 currently assigned to Judge Bates." It made suggestions, including consolidation pursuant to rule 42 of the Utah Rules of Civil Procedure, and the parties agreed to "permit the court to discuss the issue with Judge Bates for determination on how to proceed further."

¶10    In December 2019, the district court entered an order classifying the action as a general adjudication. It noted that "[a]lthough a general adjudication is pending for this water source, the specific issues the parties have raised in this case have not been addressed in the [Tooele County] general adjudication. It therefore seems to the Court that the best course of action would be to seek to consolidate this matter with the general adjudication pending in Tooele County." It added, "Although no party has specifically requested consolidation with the general adjudication pending in Tooele County, the Court believes that is the appropriate course because it would save the parties from the expense of re-filing complaints, joining parties, and re-adjudicating issues that have already been addressed in this action." Having decided that the case "has become a statutory general determination," the court gave the parties the option of either briefing what procedures to follow or allowing the court to

ask Judge Bates to consolidate this action with the action already pending before him. Ultimately, the order stated that "[t]he Court shall *sua sponte* move Judge Bates to consolidate this matter with the general determination pending before him in the Utah Third District Court in Tooele County."

¶11 The same day, the district court stated that it had "agreed with some parties that this case had, by statute, become a general adjudication of water rights." And because "the watershed at issue in this matter" was part of the Tooele County general adjudication, the court directed the parties to move for consolidation with that case.

¶12 None of the parties did this until several months later, when Millard County filed a motion to consolidate this action with the Tooele County general adjudication; Granite Peak filed a joinder, but Millard County withdrew its motion and Granite Peak filed no independent motion. Then there were motions to reconsider, which the district court denied.

¶13 The next series of events brought the matter to this court. Granite Peak filed another motion to dismiss, which the district court granted, without prejudice, in late March 2021. Granite Peak pointed to the court's earlier determination that it lacked jurisdiction to proceed and argued that although the court directed the parties to seek consolidation, that solution "only works if the parties comply," which Second Big Springs had not done.

¶14 The district court granted this motion to dismiss, stating that it lacked subject matter jurisdiction and, further, that "[t]he respective claims of the parties to the use of water in the Aquifer may be determined in the General Adjudication, which has subject matter jurisdiction to determine the parties' respective claims to the right to the use of water under Title 73 Chapter 4 of the Utah Code." Given the existence of the Tooele County general adjudication and the parties' failure to seek consolidation with

that case, the court found it "appropriate" to dismiss the case for lack of subject matter jurisdiction. That order is the subject of this appeal.

*General Adjudication*

¶15    With respect to water law cases, a general determination, alternatively referred to as a general adjudication, is a statutory proceeding that "determine[s] and settle[s] water rights which have not been adjudicated or which may be uncertain or in dispute." *Green River Adjudication v. United States*, 404 P.2d 251, 252 (Utah 1965); *see also* Utah Code §§ 73-4-12(1)(a), -15. General adjudications "prevent piecemeal litigation regarding water rights" by gathering into a single action all the claimants to water rights. *See EnerVest, Ltd. v. Utah State Eng'r*, 2019 UT 2, ¶ 5, 435 P.3d 209 (quotation simplified).

¶16    General adjudication actions proceed under Title 73, Chapter 4 of the Utah Code "and not otherwise." *See* Utah Code § 73-4-3(10). Thus, "in this state[,] there is an exclusive statutory method provided for the determination of relative rights in a river system." *Salt Lake City v. Anderson*, 148 P.2d 346, 349 (Utah 1944) (quotation simplified). The statute includes extensive procedure, and because the cases are technical, the state engineer's experience and training play a significant role in their resolution. *See United States Fuel Co. v. Huntington-Cleveland Irrigation Co.*, 2003 UT 49, ¶ 14, 79 P.3d 945. The process begins when a general adjudication is initiated. The authority to initiate this suit "is vested—and wisely so—in [a] disinterested public official," that is, the state engineer or the district court. *See Spanish Fork West Field Irrigation Co. v. District Court*, 110 P.2d 344, 346 (Utah 1941).[7]

---

7. Although this cited case refers to a prior version of the general adjudication statute in its holding that only the state engineer or the court is empowered to initiate a general adjudication, the current version of the statute has not changed in this respect.

(continued…)

Prompted by either a petition from water users or by "[t]he executive director of the Department of Environmental Quality, with the concurrence of the governor," the state engineer is authorized to "file an action in the district court for a general adjudication." *See* Utah Code § 73-4-1(1)–(2). Alternatively, the district court is empowered to convert an action into a statutory adjudication suit when the action "involves a determination of the rights to the major part of the water of the source of supply or the rights of 10 or more of the claimants of the source of supply." *See id.* § 73-4-3(1).

¶17     Once an action is commenced, the state engineer publishes notice, identifies possible claimants, and serves a summons to each. *Id.* §§ 73-4-3(2)–(4), -4. The state engineer must "give notice of further proceedings" to all claimants and to any attorney who appears on a claimant's behalf. *See id.* § 73-4-3(5)(a). The state engineer holds an informational public meeting and provides claimants instruction on how to claim a water right in the action. *See id.* § 73-4-3(7). Each person claiming a right to use water has ninety days to file a statement of claim. *See id.* §§ 73-4-3(8)(b)(i)(A), -5(1). In that statement, each claimant must provide the state engineer or the district court with "facts that clearly define the extent, limits, and nature of the claim." *See id.* § 73-4-5(1)(j). Failure to file a statement of claim is "considered evidence of an intent to abandon" one's right, and in most circumstances, the claimant will be "forever barred and estopped from subsequently asserting the unclaimed right." *See id.* § 73-4-9(1)–(2).

¶18     The state engineer compiles the statements of claim and files them with the district court, along with a list of unclaimed water rights of record. *See id.* §§ 73-4-3(8)(d), -9.5(1). From there, the state engineer serves notice of the list of unclaimed rights to all summoned claimants and holds a public meeting to explain

---

*Compare Spanish Fork West Field Irrigation Co. v. District Court*, 110 P.2d 344, 346 (Utah 1941) (citing Revised Statutes of Utah §§ 100-4-1, -18 (1933)), *with* Utah Code §§ 73-4-1(1)–(2), -3(1).

that list. *See id.* § 73-4-9.5(1)(b)–(c). A claimant has a finite period in which to object. *See id.* § 73-4-9.5(2). Thereafter, the state engineer must "exhaust[] the search" for any other claimants that have not yet been identified. *See id.* § 73-4-22(2), (3). After this, the state engineer must "prepare a proposed determination of all rights to the use of the water" and hold a public meeting "to explain the proposed determination to the claimants." *See id.* § 73-4-11(1). Again, claimants have a period in which to object. *See id.* § 73-4-11(2). If no objections are filed, the court must "render a judgment in accordance with" the state engineer's proposed determination. *See id.* § 73-4-12(1). If objections are filed, the court holds a hearing on these before rendering a judgment. *See id.* §§ 73-4-13 to -15.

¶19 The general adjudication process culminates in a judicial decree establishing water rights in a water source. This decree includes, for each right, "the name of the person entitled to the use of the water," "the quantity of water," "the time during which the water is to be used each year," "the name of the stream or other source from which the water is diverted," "the point on the stream or other source where the water is diverted," "the priority date of the right," and "any other matters as will fully and completely define the [water] right[]." *See id.* § 73-4-12(1)(b).

*Interference Claims*

¶20 An interference action is a way to enforce one's water rights against obstruction and hinderance. *See Bingham v. Roosevelt City Corp.*, 2010 UT 37, ¶ 48, 235 P.3d 730; *see also Wayment v. Howard*, 2006 UT 56, ¶ 13, 144 P.3d 1147. "Generally, a cause of action for interference lies where a junior appropriator's use of water diminishes the quantity or quality of the senior appropriator's existing water right." *Arave v. Pineview West Water Co.*, 2020 UT 67, ¶ 30, 477 P.3d 1239. When this principle of priority is violated, a senior water right holder may seek relief, commonly in the form of an injunction and damages. *See Stauffer v. Utah Oil Refining Co.*, 39 P.2d 725, 732 (Utah 1935) (instructing

as to when "plaintiffs are entitled to an injunction or judgment for damages" in an interference action); *see also In re Water Rights of Escalante Valley Drainage Area*, 348 P.2d 679, 683 (Utah 1960) ("If the supply is not sufficient the use must be curtailed or cut off in inverse order of priority."). But "[b]efore plaintiffs are entitled to" a remedy, "they must establish by a preponderance of the evidence that they are not receiving the water to which they are entitled, and that the defendant by the acts complained of has wrongfully deprived them of such water." *See Stauffer*, 39 P.2d at 732. Water right interference actions are thus distinct from general adjudications. Where the latter must proceed pursuant to statute, with its prescribed procedures, interference actions do not. *Cf. Spanish Fork West Field Irrigation Co. v. District Court*, 110 P.2d 344, 346 (Utah 1941) ("The statutory general adjudication is not intended as a remedy for the wrong to an individual, or to protect the individual against adverse interests.").

¶21　　Indeed, our supreme court "clarif[ied] the boundaries of the cause of action for interference" and found it could "be invoked only by a party with an *enforceable* water right." *Bingham*, 2010 UT 37, ¶ 53 (emphasis added). Further still, an interference action and a general adjudication have different ends. As noted, general adjudications determine and settle unknown, uncertain, or disputed claims. *See Green River Adjudication v. United States*, 404 P.2d 251, 252 (Utah 1965). From a claimant's perspective, the goal of the process is to avoid abandonment of one's water right. *See* Utah Code § 73-4-9(1). That differs from a plaintiff's objectives in filing an interference action, which are to *enforce* a water right, stop the prevailing harm, and be reimbursed for it. *See Bingham*, 2010 UT 37, ¶ 6. Likewise, a litigant's role in each action is not the same. In a general adjudication, a water user must prove "the extent, limits, and nature" of a water claim. *See* Utah Code § 73-4-5(1)(j). But in an interference action, a plaintiff must prove obstruction or hinderance to an existing water right. *See Bingham*, 2010 UT 37, ¶ 48.

ISSUE AND STANDARD OF REVIEW

¶22    Second Big Springs contends the district court erred when it dismissed its complaint for lack of subject matter jurisdiction. "Because the propriety of a motion to dismiss is a question of law, we review for correctness, giving no deference to the decision of the trial court." *Krouse v. Bower*, 2001 UT 28, ¶ 2, 20 P.3d 895. "When determining whether a trial court properly granted a motion to dismiss, we accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party." *Id.*

ANALYSIS

¶23    Did the district court correctly determine that the action before it was one requiring general adjudication and that the Tooele County general adjudication divested the court of subject matter jurisdiction to hear Second Big Springs' interference action? "Subject matter jurisdiction concerns a court's power to hear a case." *Iota LLC v. Davco Mgmt. Co. LC*, 2016 UT App 231, ¶ 44, 391 P.3d 239 (quotation simplified). State district courts have original jurisdiction in all civil matters "[e]xcept as otherwise provided by the Utah Constitution or by statute." *See* Utah Code § 78A-5-102(1). As an initial matter then, regardless of whether Second Big Springs' cause of action is one of interference or requires a general adjudication, it is within the district court's original jurisdiction. *See, e.g.*, *Salt Lake City v. Anderson*, 148 P.2d 346, 350 (Utah 1944) ("Controversies may arise in which the District Court could exercise its discretion and determine whether to proceed as a private suit or under a statutory adjudication . . . ."). Indeed, our legislature contemplated judicial review of each. *See* Utah Code § 73-3-32 (contemplating a plaintiff filing "a judicial action for interference, damages, declaratory, injunctive, or other relief, based on the use of water under an existing water right"); *id.* §§ 73-4-1, -3 (contemplating judicial

review of general adjudication actions). And our caselaw demonstrates as much. *See, e.g., Arave v. Pineview West Water Co.*, 2020 UT 67, ¶ 1, 477 P.3d 1239 (addressing the district court's exercise of its original jurisdiction over a water right interference claim).

¶24 But even where a district court has jurisdiction, it may not be able to exercise it. *See Christensen v. Utah State Tax Comm'n*, 2020 UT 45, ¶ 33, 469 P.3d 962 (distinguishing "a lack of jurisdiction from an inability to exercise that jurisdiction"). The exercise of jurisdiction is "subject to overrides or exceptions set forth in our case law," in rules of procedure, and through legislative restraints. *Id.* ¶¶ 33–34 (quotation simplified). Appellate deadlines and incomplete administrative exhaustion, for instance, can restrict the exercise of jurisdiction. *Id.* Likewise, and more relevantly, the legislature may divest a court of jurisdiction by conferring on another court exclusive jurisdiction. *See Torgerson v. Talbot*, 2017 UT App 231, ¶ 11, 414 P.3d 504 (describing the legislature's ability to "confer exclusive jurisdiction on another court" and "deprive [a] court of jurisdiction" where it would "normally have" it (quotation simplified)). It is this limit that concerns us here, because general adjudication proceedings can, in some instances, bar courts from exercising concurrent jurisdiction. *See Smith v. District Court*, 256 P. 539, 542 (Utah 1927), *modified on other grounds by Anderson*, 148 P.2d 346.

¶25 Indeed, in *Smith*, our supreme court declared that a pending general adjudication could "entire[ly] exclu[de]" another court from exercising its jurisdiction. *See id.* (quotation simplified). But it "confined" this exclusive jurisdiction "to instances where both suits are substantially the same." *See id.* (quotation simplified). That is, only where both suits are "nearly identical"—as to "parties" and "interests represented," "relief" and "purposes sought," and "rights asserted"—is a court barred from exercising concurrent jurisdiction. *See id.* (quotation simplified).

¶26 Relying on this exclusive jurisdiction doctrine, the district court dismissed Second Big Springs' claims. It found the Tooele County general adjudication divested it of jurisdiction.[8] To determine whether the district court was correct in that respect, we conduct a two-step analysis. First, we decide the nature of the action before the district court and whether it is an interference action or a general adjudication. Only in the latter case can the Tooele County general adjudication affect the Fourth District Court's jurisdiction. But even then, the Tooele County general adjudication bars the Fourth District Court's involvement only if that suit and the one before us are "substantially the same." *See id.* (quotation simplified). Evaluation of this substantial sameness is the second step, and only where it exists can we uphold the district court's decision to dismiss Second Big Springs' claim on subject matter jurisdiction grounds.

---

8. To the extent the record relies on the "principle of priority" set forth in *Hillyard v. Logan City Court*, 578 P.2d 1270 (Utah 1978), to support a bar against concurrent jurisdiction, we disagree. *See generally id.* at 1273 (Ellett, J., dissenting) (providing that, to avoid conflict between courts of concurrent jurisdiction, "the first court to exercise jurisdiction acquires exclusive jurisdiction to further proceed in the case"). The record reflects a series of motions filed with the district court asserting that concurrent jurisdiction cannot exist under *Hillyard*. If the court adopted *Hillyard*'s principle of priority, it never said so, but because in support of its decision to dismiss the case, the court pointed only to the pending Tooele County general adjudication, we are left to assume as much. Although the jurisdictional limitation expressed in *Hillyard* is not unlike the one in *Smith*, there are some differences. But because the relevant language is found in the dissenting opinion to a criminal case, far afield of water law, it is unclear to what extent *Hillyard* is controlling here. Rather than decide that question, we rely instead on *Smith* with its straightforward application to water law.

I. Nature of the Action

¶27　District courts have authority and discretion to initiate a general adjudication by converting a non-statutory water law case into a statutory proceeding. *See* Utah Code § 73-4-3(1) ("Upon the filing of any action by . . . any person claiming the right to use the waters of any river system, lake, underground water basin, or other natural source of supply that involves a determination of . . . the rights of 10 or more of the claimants of the source of supply, the clerk of the district court shall notify the state engineer that a suit has been filed."); *Spanish Fork West Field Irrigation Co. v. District Court*, 110 P.2d 344, 346 (Utah 1941) (providing that "the lower court *may*, *if it finds* [*it*] *advisable*, conduct" a private suit "as a statutory general adjudication" (emphasis added)); *see also Salt Lake City v. Anderson*, 148 P.2d 346, 350 (Utah 1944) ("Controversies may arise in which the District Court could exercise its discretion and determine whether to proceed as a private suit or under a statutory adjudication . . . ."). With that said, "all suits involving water rights [are] not necessarily general adjudications." *Wellsville East Field Irrigation Co. v. Lindsay Land & Livestock Co.*, 137 P.2d 634, 637 (Utah 1943). And it is not necessary "to force" a private suit "through the statutory procedure for a general adjudication." *See id.* "In many instances," doing so "would complicate rather than simplify litigation." *See Mitchell v. Spanish Fork West Field Irrigation Co.*, 265 P.2d 1016, 1019 (Utah 1954). And in instances in which the action is "clearly" of one nature, it is an abuse of discretion to proceed otherwise. *See Anderson*, 148 P.2d at 349–50. The nature of a water law action is determined by the pleadings and, specifically, by what the request for relief seeks to accomplish. *See id.*; *see also Smith v. District Court*, 256 P. 539, 543 (Utah 1927), *modified on other grounds by Anderson*, 148 P.2d 346. Second Big Springs and Granite Peak ask the court

for three things: monetary damages, injunctive relief, and declarative relief. We consider the nature of each.[9]

A.      Monetary Damages

¶28    Plaintiffs commonly seek monetary damages in water right interference actions. *See, e.g.*, *Stauffer v. Utah Oil Refining Co.*, 39 P.2d 725, 732 (Utah 1935); *Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.*, 2020 UT 47, ¶ 29, 469 P.3d 1003. But damages are

---

9. The district court did not determine the nature of the action according to the requests for relief. Instead, it concluded that "Granite Peak's joinder of [twenty-five] users of the same source of supply as third-party defendants" had "by statutory definition" "transformed" the nature of the case. As the court saw it, a case with "more [than] ten parties" was "complicated enough . . . to be characterized as a general determination."

   But section 73-4-3 does not grant the district court authority to convert a water law action into a statutory adjudication proceeding *merely* because "10 or more . . . claimants of the source of supply" have been joined in the suit. *See* Utah Code § 73-4-3(1). Indeed, our supreme court has concluded that a private interference suit can, just as a statutory adjudication could, "cover [thousands of] water users." S*ee Spanish Fork West Field Irrigation Co. v. District Court*, 110 P.2d 344, 346 (Utah 1941). Rather, a statutory proceeding is triggered when a suit calls for "a *determination of the rights* . . . of 10 or more of" such claimants. *See* Utah Code § 73-4-3(1) (emphasis added). And to determine if Granite Peak's complaint called for that, the court must look to Granite Peak's request for relief. *See Salt Lake City v. Anderson*, 148 P.2d 346, 349–350 (Utah 1944).

   Second Big Springs contends that only its complaint, and not that of Granite Peak, can shape the cause of action in this case. We need not decide whether Second Big Springs is correct in that respect, because we reach the same conclusion whether or not we take into account the Third-Party Complaint filed by Granite Peak.

unavailable in a general adjudication proceeding. *See Smith v. District Court*, 256 P. 539, 542 (Utah 1927) (describing plaintiff's and defendant's requests for damages and stating that, "[m]anifestly, such relief as this is not within the contemplation of the statute providing for a general adjudication of water rights"), *modified on other grounds by Salt Lake City v. Anderson*, 148 P.2d 346, 351 (Utah 1944).

¶29 Second Big Springs requested that the court award monetary damages. Granite Peak asked the court to order reimbursement according to each third-party defendant's "percentage of fault." These remedies are unavailable in a general adjudication.

B.    Permanent Injunction

¶30    Injunctive relief is a common request in interference actions. *See, e.g.*, *Wayment v. Howard*, 2006 UT 56, ¶ 7, 144 P.3d 1147; *Stauffer v. Utah Oil Refining Co.*, 39 P.2d 725, 726 (Utah 1935); *Logan, Hyde Park & Smithfield Canal Co. v. Logan City*, 269 P. 776, 778 (Utah 1928). But injunctive relief is not unique to interference actions. Our supreme court has identified the district court's "power and jurisdiction" "under the general statutory adjudication procedure" "to issue temporary injunction orders prior to judgment" and, afterward, to enjoin water users "as a necessary corollary" "to protect and enforce such rights." *See Salt Lake City v. Anderson*, 148 P.2d 346, 351 (Utah 1944) (quotation simplified).

¶31    Because injunctive relief is not limited to one form of action, the request for injunctive relief is unhelpful to identifying the underlying nature of the action. But a *specific* request for injunctive relief, how it is worded and other requests that surround it, is instructive. When an injunction is pleaded in a general adjudication, the request usually accompanies a request for the court to adjudicate water rights. For example, in a suit that could be "maintained only as a statutory proceeding," the

plaintiffs first asked the court to determine the rights, title, and priority "of each plaintiff" and of "approximately 2,430 defendants" "to the use of water from Utah Lake." *See id.* at 347, 349.[10] Accompanying that request, the plaintiffs asked the court to enter "all orders and injunctions necessary to a full exercise and enjoyment . . . of every right herein decreed." *See id.* at 347 (quotation simplified).

¶32 On the other hand, injunctive relief in an interference action is tailored to the alleged interference, obstruction, or hinderance. And the request is often accompanied by other remedies to reimburse for past harm and to ensure against future harm. For instance, in *Wayment v. Howard*, 2006 UT 56, 144 P.3d 1147, where a water user's dike hindered and obstructed his neighbor's water right, a district court in a private proceeding "permanently enjoined [the user] from further interference" and ordered that the diversion point in question be physically modified to stop the harm. *See id.* ¶¶ 7, 13. Similarly, *Stauffer v. Utah Oil Refining Co.*, 39 P.2d 725 (Utah 1935), was an interference action against an oil refinery in which the water users alleged that the refinery's pumping had deprived them of their entitlements and asked the court "to enjoin [the refinery] from operating its pumps" as well as "to recover money judgments." *See id.* at 726.

¶33 Second Big Springs' request is similar to the requests in *Wayment* and *Stauffer*. Second Big Springs requested a permanent injunction "to the extent necessary to stop the ongoing interference with [Second Big Springs'] senior rights." In that sense, Second Big Springs' request is tailored to alleged

---

10. The proceeding in *Salt Lake City v. Anderson*, 148 P.2d 346 (Utah 1944), was not initiated under the general adjudication statute. *Id.* at 348. Rather, the plaintiffs brought a private suit in equity and "consistently maintained" their position that the action was "in no sense a suit under the [general adjudication] statute." *See id.* (quotation simplified). But the supreme court disagreed. *See id.* at 349–50.

interference. Further still, its request for injunctive relief is, as in *Stauffer*, accompanied by a request for a money judgment to remedy past harms. Critically, though, Second Big Springs' request for injunction is not accompanied by one for adjudication. To be sure, Second Big Springs does not request that any water rights be "determined," "adjudged," or "decreed." *See Anderson*, 148 P.2d at 347 (quotation simplified). And indeed, Second Big Springs does not ask for these things because its and Granite Peak's rights *have already been* established. Second Big Springs' complaint alleges those very water rights, detailing the water right number, holder, priority date, and permitted quantity for both its own and Granite Peak's water rights. *See supra* ¶ 4. Rather than ask the court to identify new water rights, Second Big Springs asked the court to *enforce* rights *already* obtained by enjoining Granite Peak from interfering. And it is in this sense that Second Big Springs' request for an injunction is consistent with a cause of action for interference and is wholly at odds with a general adjudication.

¶34     Still, Granite Peak and Millard County construe Second Big Springs' request for injunctive relief as *implicitly* requiring an adjudication of water rights. Granite Peak asserts that Second Big Springs seeks to "permanently enjoin" Granite Peak "from ever using its water rights again regardless of whether sufficient water is available to supply both [Second Big Springs'] rights and [Granite Peak's] rights." "Thus," it argues, "rather than an interference claim," Second Big Springs has "effectively" sought a water right determination that Granite Peak "has no right to pump water." Alternatively, Millard County asserts that Second Big Springs "seeks to curtail" Granite Peak's water rights "in an amount to be determined," thus implicating an adjudication of water rights. Each argument is unavailing.

¶35     We acknowledge that, in some cases, a plaintiff expressly asked only for an injunction, yet an adjudication is what was required. *See Wellsville East Field Irrigation Co. v. Lindsay Land & Livestock Co.*, 137 P.2d 634, 636–37 (Utah 1943); *see also Logan,*

*Hyde Park & Smithfield Canal Co.*, 269 P. at 778–79 (Utah 1928). In *Wellsville*, for instance, plaintiff irrigation companies sought to enforce their water rights, as established in the Kimball Decree,[11] by enjoining the defendants from "interfering with the flow of any water from" the Little Bear River "beyond or in excess of the rights specifically decreed to each [defendant]." *See Wellsville*, 137 P.2d at 636. As it happened, some of the defendants were not subject to the Decree, "because neither they nor their predecessors were made parties to it." *See id.* Accordingly, although the plaintiffs did not expressly seek a determination of "the relative rights of" those defendants not properly bound, their request for injunctive relief required it. *See id.* at 637. But even there the court found that because such a determination lacked "the comprehensiveness" of a statutory adjudication, the court could proceed non-statutorily with an interference suit.[12] *See id.*

¶36    Second Big Springs' request does not implicitly ask the court to adjudicate any water right, let alone rights of a "comprehensive" sort. Granite Peak does not challenge the fact that its rights are already established, but instead argues that Second Big Springs requests to overrule that determination by curtailment. "Put simply," Granite Peak argues, "the Complaint seeks a permanent determination that Granite Peak's water rights may never be used again." That is not an accurate characterization. Contrary to seeking a permanent injunction "regardless of" water available, Second Big Springs expressly asks for a permanent injunction "*to the extent necessary to stop the*

---

11. The Kimball Decree, dated February 21, 1922, is the result of a general adjudication of the Little Bear River in Cache County. *See Wellsville East Field Irrigation Co. v. Lindsay Land & Livestock Co.*, 137 P.2d 634, 636 (Utah 1943).

12. The *Wellsville* court reached its conclusion "without thought of laying down any line at which a so-called private suit may in reality become or take on the aspects of a general adjudication." *Id.* at 637.

*ongoing interference with* [*Second Big Springs'*] *senior rights.*" (Emphasis added.) And that request does not, under these facts, implicate a general adjudication. We understand Millard County's argument to challenge this point, contending that the court's determination *of curtailment* requires an adjudication of water rights. If the parties' rights had not already been established, perhaps that would be true, insofar as curtailment presupposes a water right already in existence (namely, *that which it will or will not curtail*). But again, Second Big Springs alleged its and Granite Peak's precise water rights, which Granite Peak did not deny. Thus, the court can curtail Granite Peak's water *usage* without disturbing its existing water *rights*. No determination of water rights is required, here.[13]

¶37    As for Granite Peak, its pleading requests that the court enjoin the third-party defendants according to their "percentage of fault" and according to the "Utah law of priority." Again, perhaps a request for relief such as this could, in another context, require an adjudication of water rights. To determine the extent of a defendant's fault in interfering with a plaintiff's water rights, a court must make factual findings not only of how much water a

---

13. Millard County also argues that Second Big Springs' request for injunctive relief "differs from a standard interference claim because" the relief sought is not only to stop interference, but to protect "the source of supply." Again, Second Big Springs' request is taken out of context. Specifically, it asked the court to "enjoin[] [Granite Peak's] diversions so as not to diminish, impound, obstruct, or impede in any manner the free and natural flow of the water of Lake Creek, and the springs that feed it, *to which* [*Second Big Springs*] [*is*] *entitled* at [its] several points of diversion." (Emphasis added.) Accordingly, Second Big Springs does not seek to protect "the water source itself." Instead, it seeks to protect the portions of the water source to which it is entitled. That is precisely the sort of relief requested in an interference action.

user draws but also, and importantly, how much the user is entitled to draw. If that entitlement were not already established, the court may be put in a position where it must do so.[14] But that is not our situation. The state engineer already determined each third-party claimant's entitlements. Granite Peak alleged as much, detailing in its complaint the water right number, holder, priority date, allowance (in acre-feet[15] or an equivalent unit, down to the second decimal point), point of diversion, and any use limitation associated with each third-party defendant's water right. Thus, Granite Peak cannot ask the court to adjudicate rights. Instead, it asks the court to *enforce*, by way of apportionment, *already-existing* rights.[16]

---

14. Whether such a determination would be sufficiently "comprehensive" to require statutory proceedings, we need not decide, because all the third-party defendants' water rights in this case have already been established.

15. "[T]he standard unit of measurement of the volume of water shall be the acre-foot, being the amount of water upon an acre covered one foot deep, equivalent to 43,560 cubic feet." Utah Code § 73-1-2.

16. To the extent that the County's argument asserts that a determination *of curtailment* is, itself, a determination under the statute, the general adjudication statute does not support that contention. A determination, as the statute uses the term, "*establish*[*es*] the rights to the use of the water of said river system or water source." *See* Utah Code § 73-4-12 (emphasis added). A determination *of curtailment* does not do this. To the contrary, and as mentioned earlier, curtailment *presupposes* the existence of a water right. Thus, when a court orders a water user to curtail its use by some quantity, the court is not creating, but instead enforcing, a water right. Our caselaw also supports that conclusion insofar as Millard County's interpretation, carried to

(continued…)

C.    Declaratory Judgment

¶38    As with injunctive relief, declaratory judgments are available in several contexts. *Compare Meridian Ditch Co. v. Koosharem Irrigation Co.*, 660 P.2d 217, 220 (Utah 1983), *with In re Uintah Basin*, 2006 UT 19, ¶ 27, 133 P.3d 410, *abrogated on other grounds by Energy Claims Ltd. v. Catalyst Inv. Group Ltd.*, 2014 UT 13, 325 P.3d 70. And in interference and statutory actions alike, a declaratory judgment is generally pleaded to enforce water rights already established. *See, e.g., Meridian Ditch Co.*, 660 P.2d at 219, 223; *Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.*, 2020 UT 47, ¶ 11, 469 P.3d 1003; *In re Uintah Basin*, 2006 UT 19, ¶¶ 18, 27. Still, causes of action are distinguishable. Where the effect of a declaratory judgment "begins and ends with" the parties, the request need not implicate a general adjudication. *See In re Uintah Basin*, 2006 UT 19, ¶ 57. But where the effect of the judgment draws on an issue of first impression and has the "potential[] [to] reverberate[]" and affect "many downstream appropriators," the matter is "appropriate for resolution under Utah's general adjudication statute." *See id.* ¶¶ 57, 61.

¶39    In *Meridian Ditch Co. v. Koosharem Irrigation Co.*, 660 P.2d 217 (Utah 1983), for instance, Meridian sought a judgment declaring its entitlement, "formerly designated in the Cox Decree,"[17] "of the Otter Creek waters." *Id.* at 219, 223. That request

---

its logical end, would render injunctive relief essentially unavailable in interference actions. Indeed, enjoining a rightsholder will almost always require the court to "determine" the quantity by which the user must reduce its use. Otherwise, it would be challenging or even impossible to know one was in compliance. But our caselaw makes clear that injunctive relief is available in interference proceedings. *See supra* ¶ 30.

17. The Cox Decree, entered in 1936, is the result of a general adjudication of the Sevier River. *See Meridian Ditch Co. v. Koosharem Irrigation Co.*, 660 P.2d 217, 218 (Utah 1983).

proceeded through a non-statutory action. *See id.* In *Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.*, 2020 UT 47, 469 P.3d 1003, water user Rocky Ford alleged, among other things, water right interference against Kents Lake, asserting "that its water rights had been injured by Kents Lake's . . . failure to measure water usage in accordance with the 1931 [Beaver River] Decree." *Id.* ¶ 11. Rocky Ford requested, in part, a declaratory judgment clarifying both "the priority of the parties' rights and Kents Lake's [measurement] obligations" under the decree. *See id.* ¶ 1. That request likewise proceeded non-statutorily. *See id.*

¶40 But the declaratory relief requested in *Uintah Basin* is different in kind. *See In re Uintah Basin*, 2006 UT 19, ¶¶ 3, 15, 27. There, Strawberry River water users sued the United States Bureau of Reclamation, seeking a declaration of "equitable title to [Strawberry River Project] water" and, within that ownership interest, "the right to recapture return flows." *See id.* ¶ 27. Specifically, the water users sought to recapture 64,400 acre-feet of return flows. *Id.* ¶ 22. In a competing claim, the United States sought to recapture 49,200 acre-feet. *Id.* Critically, Strawberry River Project water was imported, traveling from the Colorado River drainage to the Great Basin, and one's right to recapture return flow from imported water is an unsettled area of law. *See id.* ¶¶ 49, 58. The supreme court thus found these claims "ambitious" and involving "issues and impacts . . . too expansive to allow" the suit to proceed privately. *See id.* ¶ 57 & n.14. Indeed, the effect of recapturing those waters that "augment[] the supply of water available for beneficial use in both Utah Valley and the Salt Lake Valley" could "reverberate[] all" along the Wasatch Front. *See id.* ¶¶ 49, 57. Moreover, the court suggested that to settle the issues privately would be unfair to other users who may also have a stake in the matter. *See id.* ¶ 57 n.14. "This is not just a 'private dispute,'" the court concluded, "but potentially impacts many downstream appropriators and involves important water law issues of first impression." *Id.* ¶ 61.

¶41 Second Big Springs asks the court for a declaratory judgment confirming (1) that its rights are senior to those of Granite Peak and, therefore, that Granite Peak has a duty of non-interference; (2) that Big Springs Creek, Lake Creek, Big Springs, and Dearden Springs "are fully appropriated"; and (3) that Granite Peak has "no rights to those sources." The first of these is the most straightforward. As we see it, a judgment declaring Granite Peak's relative priority as to Second Big Springs, and the duties that accompany that junior position, "begins and ends with" the parties. *See In re Uintah Basin*, 2006 UT 19, ¶ 57. Indeed, a court can declare the relative priority of water rights in the context of a private interference action. *See generally Rocky Ford*, 2020 UT 47, ¶¶ 32–34. This makes sense given that priority is often an element in interference actions. *See Arave v. Pineview West Water Co.*, 2020 UT 67, ¶ 30, 477 P.3d 1239.

¶42 Second Big Springs' second requested declaration is the most contentious. The state engineer's amicus brief contends that the state engineer, and not the court, has exclusive authority to decide whether water is available for appropriation. Accordingly, the state engineer not only asserts that the general adjudication statute does not "permit the court to determine whether water is available for appropriation," but suggests that Second Big Springs' relief cannot be granted in a private action either. Granite Peak agrees that the authority to address water availability lies "exclusively" with the state engineer. But, contrary to the state engineer's argument, Granite Peak asserts that the engineer is permitted by statute to address water availability within a general adjudication. Second Big Springs itself asserts that, at the very least, its request would not trigger a general adjudication, because "whether an area is open or closed to *new* appropriations is irrelevant to the determination of the *ongoing* water use evaluated in a determination case." We agree that the state engineer, and not the district court, determines water availability. *See* Utah Code § 73-3-8(1)(a) (providing that it is "the duty of the state engineer to approve an application [to appropriate water] if there is reason to believe" (among other things) that "there is unappropriated

water in the proposed source"). Accordingly, if the state engineer has not already declared Big Springs Creek, Lake Creek, Big Springs, and Dearden Springs "fully appropriated," the district court lacks the authority to do so in the first instance. In such a case, Second Big Springs would not be entitled, in a non-statutory action, to a declaration involving water availability.

¶43 But transforming that action into a general adjudication does not help Second Big Springs. Indeed, general adjudication proceedings "provide[] no remedy for any relief except the determination of rights to the use of water" (and injunctive relief as provided in *Salt Lake City v. Anderson*, 148 P.2d 346, 351 (Utah 1944)). An assessment of the water available in a source is an inquiry wholly distinct from determining the rights to the use of water. Nothing in the general adjudication statute instructs the court to include in its final judgment an assessment of water availability. *See* Utah Code § 73-4-12. To be sure, an adjudication of all the claims in a source can be done without assessing how much water is left. Thus, Second Big Springs' request that certain sources be declared fully appropriated does not require this action to proceed under the general adjudication statute. If that request can be granted at all, it would be pursuant to an interference proceeding.

¶44 Second Big Springs further requested that the district court declare that Granite Peak has no rights in Big Springs Creek, Lake Creek, Big Springs, and Dearden Springs. That request is consistent with an interference action to the extent it is, at base, a request to enforce rights already established. If the district court found the declaration justified, the court could declare Second Big Springs' priority without thought of affecting other appropriators downstream. *See In re Uintah Basin*, 2006 UT 19, ¶ 61. Indeed, the only party that declaration would affect is Granite Peak. And that question does not implicate an "ambitious" or "expansive" issue of first impression. *See id.* ¶ 57 & n.14. The question it poses is this: Of those rights held by Granite Peak, as set forth in Second Big Springs' complaint, where is Granite Peak entitled to divert

water? That is a matter appropriately settled in an interference proceeding. And in any case, Granite Peak conceded as much in its amended answer.[18]

¶45　Granite Peak requested a "judgment declaring [the] [t]hird-[p]arty [d]efendants responsible for their proportionate share of damages attributable to their respective fault" in harming Second Big Springs. Admittedly, that request affects downstream appropriators. But that fact alone is not enough to liken the request to the Strawberry River water user's request in *In re Uintah Basin*. Divvying up harm according to previously determined water rights is not as ambitious or as novel as recapturing the return flows of imported water. The effects of that relief will not reverberate across the Snake Valley but will remain with those third-party defendants, if any, who are responsible for the harm Second Big Springs claims it has endured and continues to endure.

¶46　In sum, none of Second Big Springs' or Granite Peak's requests implicate an adjudication of rights. Instead, these requests for relief reveal the non-statutory nature of the action, sounding only in tortious interference. The district court abused its discretion in proceeding otherwise. *See Anderson*, 148 P.2d 346, 350 (Utah 1944). The Tooele County general adjudication does not—and indeed, cannot—bar the Fourth District Court from exercising jurisdiction over the matter.[19]

---

18. Specifically, Second Big Springs alleged in paragraph 40 of its complaint that Granite Peak has "no rights to appropriate the waters of Lake Creek or the springs that form the flow of Lake Creek." Granite Peak's amended answer "admit[ted] the allegations in Paragraph 40 of the Complaint."

19. Relying on *Conant v. Deep Creek & Curlew Valley Irrigation Co.*, 66 P. 188, 189 (Utah 1901), Granite Peak contends that, to the

(continued…)

## II. Substantial Sameness

¶47    Even if Second Big Springs' or Granite Peak's requests for relief could be construed as requests for a general adjudication, the Tooele County general adjudication still would not bar the Fourth District Court from exercising jurisdiction. For a court to exercise exclusive jurisdiction over a general adjudication, the suits in question must be "substantially the same." *See Smith v. District Court*, 256 P. 539, 542 (Utah 1927), *modified on other grounds by Salt Lake City v. Anderson*, 148 P.2d 346 (Utah 1944). As to what constitutes substantial sameness, our supreme court has provided the following guidance:

> There must be the same parties, or at least such as represent the same interest, there must be the same rights asserted, and the same relief prayed for. This relief must be founded on the same facts, and the title or essential basis of the relief sought must be the same. The identity in these particulars should be such that if the pending case had already been disposed of, it could be pleaded as a former adjudication of the same matter between the same parties.

*Id.* at 543 (quoting *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 715 (1871)). *Smith* thus provides at least three avenues for evaluating the dissimilarity of two cases: parties' interests, rights asserted, or relief requested. We focus on the last of these, as it is the relief requested that we see as most readily distinguishing the case before us from that pending in the Third District Court.

---

extent this case requires a determination of Granite Peak's Nevada water rights, "no Utah court has jurisdiction" to hear this case. We need not decide if Granite Peak's interpretation of *Conant* is correct, because we find that the case at hand does not require a determination of water rights to begin with.

¶48 In *Smith*, our supreme court held that a pending adjudication bars a subsequent case "when, and only when, all the relief sought in the second action is obtainable in the first." *Id.* at 544 (quotation simplified). In that case, a water claimant filed suit in Morgan County against another water user. *See id.* at 539. Collectively, the parties sought an adjudication of their rights, an injunction, and, importantly, monetary damages. *See id.* at 543. The district court "declined to proceed" in light of a pending adjudication in Weber County. *See id.* at 540. On appeal, the supreme court considered whether "the two cases [were] so nearly identical . . . as to bring the cases within" Weber County's exclusive jurisdiction. *See id.* at 542. It determined they were not. *See id.* at 543. Specifically, the court found a lack of substantial identity in the remedies sought within the suits, pointing in part to the fact that both parties sought monetary damages. *See id.* Because that remedy is not available in statutory proceedings, the court reasoned that "neither plaintiff nor defendant . . . could, in the Weber [C]ounty action, obtain the full relief prayed for in their respective pleadings." *Id.* Thus, the suits were not substantially the same. *See id.*

¶49 Likewise, in the case before us, neither Second Big Springs nor Granite Peak could in the Tooele County general adjudication "obtain the full relief prayed for in their respective pleadings." *See id.* Second Big Springs and Granite Peak both ask for an award of damages. But a district court presiding over a general adjudication is not empowered to grant such relief. *See id.* Accordingly, if the action before us were consolidated with the Tooele County general adjudication, both parties would be barred from full relief. *See id.* Because not "all the relief sought in the second action is obtainable in the first," we cannot say that the action before us is "substantially the same" as the one pending in the Third District Court. *See id.* Thus, the Tooele County general adjudication cannot deprive the Fourth District Court of

exercising jurisdiction over these proceedings. It was error for the court to hold otherwise.[20]

CONCLUSION

Because none of Second Big Springs' or Granite Peak's requests for relief implicate a general adjudication of water rights, the district court abused its discretion in converting the action into a statutory suit. Further, because neither party can receive full relief in the Tooele County general adjudication, that action cannot, under the exclusive jurisdiction doctrine, deprive the Fourth District Court of jurisdiction. For either reason, the court erred in dismissing the action without prejudice. The case is remanded for such proceedings as may now be in order.

───────────

20. Second Big Springs argues that Granite Peak's appellate brief and its motion to join parties and file a third-party complaint "repeatedly delayed this case with frivolity." Thus, Second Big Springs asks this court to award rule 33 damages. See Utah R. App. P. 33(a) (permitting the court to award "just damages" where "the court determines that a motion made or appeal taken under these rules is either frivolous or for delay"). "[A] frivolous appeal, motion, brief, or other document is one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." Id. R. 33(b). "An appeal, motion, brief, or other document interposed for the purpose of delay is one interposed for any improper purpose such as to harass, cause needless increase in the cost of litigation, or gain time that will benefit only the party filing the appeal, motion, brief, or other document." Id. "This is a high bar" that requires "egregious" conduct. Pang v. International Document Services, 2015 UT 63, ¶ 13, 356 P.3d 1190 (quotation simplified). Water law cases are complex, and we do not conclude that Granite Peak's conduct is so egregious as to warrant an award of damages under rule 33.